### † Foster *versus* Goddard.
### Foster & *ux. versus* Same.

A traveler, with his horse and carriage, where the highway is unobstructed, without notice of a carriage behind him, may use any part of it wrought for the public accommodation.

And when such traveler, in the exercise of ordinary care, suffers damage in his person or property by a collision with another carriage, through want of such care in its driver in attempting to pass by him in the same direction, arising either from attempting to pass on the side he ought not to under the circumstances, or from having a horse unsuitable for that occasion, he is entitled to recover the same of such negligent driver.

On Report from *Nisi Prius,* HATHAWAY, J., presiding.

These were two actions on the case to recover damages sustained by a collision of carriages in the highway, alleged to have happened through the fault of the defendant; the first for damage to plaintiff's property, the second for injury to his wife.

The plaintiff's wife and one Mrs. Foster, were riding in his chaise down one of the streets in Bangor, the horse being on a walk, when the defendant, driving the horse and wagon of one Frost, who was with him, overtook the plaintiff's wife on the right side, overturned the chaise and threw her into the gutter.

Upon the question of the exercise of ordinary care on the part of defendant much evidence was introduced; and it was agreed that the full Court should render judgment by nonsuit or default, drawing inferences from the testimony as a jury might, and assess the damages if a default should be entered.

*Knowles*, for defendant, contended that he was rightfully attempting to pass to the right; that it was the legal side of the road for him to pass; that the injury was occasioned by inevitable accident, owing to sudden fright or impulse of the horse, which rendered it impossible to control or manage him.

*Rowe* and *Bartlett* for plaintiff.

The defendant turned out on the wrong side. One who overtakes and wishes to pass another, should go on the left. This is a settled principle in England. Steph. N. P., 984; 5 Petersdorf's Abr. 55.

Here there was no occasion for going to the right; there was room enough on the other side. The defendant saw the condition of the chaise, and should have taken room enough in passing it. For a case similar to this, see *Mayhew* v. *Boyce*, 1 Stark. 423.

As a general principle, every one who overtakes and attempts to pass another on the road, does it at his own risk. R. S., c. 26, § 3.

TENNEY, J. — If a party seek to recover damage for an injury done to him, by the collision of another's carriage with his own, on the highway, and shows that he was in the exercise of ordinary care, at the time; or if not using such care, and the want thereof in no wise contributed to produce the injury; but if it was occasioned by the other party in consequence of the want of ordinary care in him, he will be entitled to recover. *Kennard* v. *Burton*, 25 Maine, 39; *Noyes* v. *Shepherd & al.*, 30 Maine, 173; *Moore* v. *Abbot*, 32 Maine, 46.

That the injury complained of by the plaintiffs, was by a collision of the wagon, driven by the defendant, with the plaintiff's chaise, there is no controversy.

No want of ordinary care in the female plaintiff, who was driving the chaise at the time of the accident, has been proved, or attempted to be shown, excepting, that as the chaise came down the hill, where the collision took place, it inclined to the right, in the traveled part of the way, so that as it

proceeded, it was gradually approximating to that side of the street.

A party having before him the entire road, free from carriages, or other obstructions, and having no notice of any carriage behind him, in season to stop, or to change his course or position, is at liberty to travel upon such parts of the way as suits his convenience or pleasure, and no blame can be imputed to him. This is properly inferable from R. S., c. 26, § 3.

It was in proof, that Mrs. Foster was driving the chaise at a walk or slow trot down the hill, in company with another lady. The first notice which they had of the defendant's approach, before the collision, was the noise of a vehicle, like a horse running with a carriage; that there was not time to stop the horse, before the disaster took place; and if he had been stopped, the collision would not have been avoided, and that nothing was heard as having been said by the defendant, till after the collision.

From all the facts in the case, it is very clear, that the horse with the chaise, in which Mrs. Foster and the other lady were riding, was driven with ordinary care, and that neither contributed in the least to produce the injury, by any act or omission, which did not conform to the law.

Has it been shown, that the accident took place, in consequence of any want of ordinary care on the part of the defendant? It is proved, that when the defendant's wagon came to the top of the hill, on which the collision occurred, before entering upon any considerable descent in the way, the horse inclined to go to the left, into Broadway, a street tending from the one in which he had traveled, and in which the defendant intended to proceed down the hill; that in the attempt to give him the desired direction, he struck him with the whip, which effected his purpose; that this stroke of the whip was not improper, and was no more violent than was necessary to cause obedience in the horse to the rein; that at the time the horse attempted to go into Broadway, and was brought back to the proper course, he

slackened his speed, and when the defendant struck him, it brought him more under control, and he was more manageable after he was struck than before, and the striking did not increase his speed; but from the evidence, the horse must have been traveling at a rate, which it cannot be doubted, came up to the utmost verge of prudence, for the place, and under the circumstances, which existed; but it is manifest that he was not frightened. At the time the defendant's wagon commenced the descent of the hill, from Broadway, the plaintiff's chaise was several yards below, proceeding in the same direction, inclining slightly to the right in its progress; that it was on the right of the centre of the street, and a wide space in the street was on the left, which according to the testimony of the plaintiff's witnesses, was free from carriages or any thing which could be an obstruction; that the defendant made ineffectual endeavors to reduce the speed of his horse down the hill; but it did not appear, that he made any attempt to turn the course of the horse so that he might pass on the left of the chaise, but in driving on the right thereof the collision took place.

But Mr. Frost, who was the owner of the horse driven by the defendant, and in the wagon with him at the time, states, that when they were at Broadway, on the top of the hill, they saw two chaises in the way below them, and it was to avoid a collision with them, that the defendant attempted to drive by the chaise of the plaintiff upon the right; and he states, that when he last saw the other chaise it was only two rods below Broadway; and he cannot say, where it was at the time of the collision; that when he first saw it, it was just ahead of that of the plaintiff, but he took no notice of it after the other inclined to the right; and he did not know which way it went, whether it went down the hill, or turned back and went the other way. This evidence, touching the presence of the other chaise, is not confirmed by other witnesses, who had good opportunity of seeing all that took place; but they testify that they saw at the time no other chaise, excepting that of the plaintiff.

In a subsequent deposition, he makes no mention of another chaise, but gives as a reason for the defendant's passing to the right of the plaintiff's chaise, that the defendant could not have changed his course, and gone to the left of the latter on the south, and passed it, at the time that he first perceived it was diverging from a direct line to the right, because he was so near to it that he would inevitably run into it. The testimony of Frost in the deposition first taken, that the defendant's wagon wheels, upon the left side, passed on to the ridge of earth, thrown from the gas pipe trench, and threw the defendant out first, and after passing about ten feet further threw out the deponent, and by the time he had risen up, the wagon had righted, and had struck the chaise, having gone twelve or fourteen feet from the place where the latter had fallen, can have no essential influence upon the result of the case. ' The carelessness of the defendant, if any there was, would seem to consist in his attempt to go upon the right side of the chaise instead of the left. If this course was a prudent one, for any reason, and in passing, he was not wanting in ordinary care, he cannot be held liable. On the other hand, if there was no obstacle to his passage on the left, and it was without ordinary care, that he passed upon the right, his liability is not taken away or qualified, if he was thrown out of the wagon in the manner stated by Frost.

By the evidence adduced by the plaintiff, it is quite apparent, that the defendant was wanting in ordinary care at the time of the disaster, in driving the horse; or that the horse himself, if he could not be controlled, when it does not appear that he was frightened, was unsuitable to be used in that place and under the circumstances in proof. The evidence introduced in explanation is unsatisfactory, for such purpose. And when the whole is examined, we think the plaintiffs are entitled to recover.     *Defendant defaulted.*

In the action *John B. Foster* v. *John Goddard,* damages $250.

In the action *John B. Foster & ux.* v. *John Goddard,* damages $300.