60 221
96 314

WILLIAM PIGOTT v. SILAS ENGLE AND THOMAS J. LILLY.

*Highway—Rights and duties of travelers using same—Error in excluding testimony, cured by its subsequent admission—Special questions to jury.*

1. Where certain questions put to a witness are excluded by the court, but the witness is subsequently allowed to testify fully upon the subject-matter of such inquiries, the error, if any, is cured.

2. It is not error to refuse to submit special questions to the jury upon immaterial, inconclusive, or admitted matters.[1]

3. The rights of travelers on a public highway are mutual and co-ordinate, and it is the duty of each to so use his right of passage as not to cause injury or detriment to another having a like right.

4. For remaining points decided, reference is had to the opinion.

Error to Cass. (Smith, J.) Argued February 17, 1886. Decided February 19, 1886.

Trespass. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Clapp & Bridgman*, for appellants:

"Intention is generally proved by circumstances, because usually there is no other mode of proof. But when the only person who knows the fact is accessible as a witness, his answer must necessarily be more direct evidence than any other; and if there is any reason to suspect his candor, the jury can make all the allowances called for by his position and demeanor:" *Watkins v. Wallace*, 19 Mich. 76.

[1] Act No. 15, Session Laws of 1885, provides that special questions to be submitted to a jury "shall not exceed five in number and shall be *each* in *single*, short sentences, readily answered by yes or no."

The judge put the case clearly to the jury, that they might find for the plaintiff, as in an action for negligence—nonfeasance, and this was error. The action is trespass *vi et armis*. Pigott's attorneys define his action "a plea of trespass." They adopt the formula "with force and arms." They charge malfeasance; direct force; that the defendants "with force and arms drove said wagon and said horses against said buggy." That they "drove a certain span of horses and lumber wagon with great force and violence upon, etc." They charge the injury as the immediate consequence of a wrong act done forcibly, not mediate or incidental: Bouvier's Law Dictionary, Trespass; *Smith v. Webster*, 23 Mich. 300; *Macumber v. White River Log, etc. Co.*, 52 Mich. 195.

*Howell & Carr* and *S. Tryon*, for plaintiff:

"Where the conduct of the defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of such injury:" Cooley on Torts, 674; 1 Waterman on Trespass, §§ 14, 20, 21; 2 Thompson on Negligence, 1160; *Maumus v. Champion*, 40 Cal. 121; *N. J. Exp. Co. v. Nichols*, 33 N. J. L. 435; *Pennsylvania Co. v. Sinclair*, 30 Am. 185; *Litchfield Coal Co. v. Taylor*, 81 Ill. 590. "Imprudent conduct, growing out of sudden fright, is chargeable to the person whose negligence gave rise to the alarm:" *Collins v. Davidson*, 19 Fed. Rep. 83; *Stevenson v. C. & A. R. R. Co.* 18 Fed. Rep. 493; 1 Thompson on Negligence, 382–3.

Pigott had a right to expect ordinary care on the part of Engle: *Daniels v. Clegg*, 28 Mich. 33; and ordinary care would require Engle to turn from Pigott: Sherman & R. on Negligence, § 36; *Austin v. N. J. Steamboat Co.* 43 N. Y. 76; note, 30 Am. Rep. 190; and Pigott had the right to act upon the assumption that Engle would try to avoid a collision: 1 Thompson on Negligence, 382, note 3; *Kellogg v. C. & N. W. Ry.*, 26 Wis. 223.

Under the law of the road Pigott had a right to pass defendants, and they had no right to try to prevent his doing so: 1 Addison on Torts, § 234; *Com. v. Temple*, 14 Gray, 75; 1 Waterman on Trespass, § 208; *Strohl v. Levan*, 39 Penn. St. 177.

The action of trespass *vi et armis* lies for an injury of which the defendant is the immediate cause, though it happen by accident or misfortune: *Waldron v. Hopper*, Coxe, 339; *Bishop v. Ely*, 9 John. 294; *Rappelyea v. Hulse*, 7 Halst. 257; *Case v. Mark*, 2 Ham. (Ohio), 169; *Burch v. Carter*, 3 Vroom. 554; *Daniels v. Clegg*, 28 Mich. 34; and the master and servant may be sued jointly when the trespass was committed by the command of the master, and this is so when the act is negligently done by the servant in performing an illegal order of the master: 2 Thompson on Negligence, 891; *McLaughlin v. Pryor*, 4 M. & G. 48; *Smith v. Webster*, 23 Mich. 298.

A refusal to submit special questions to the jury is not error where they involve facts from which no legal conclusion can be drawn: *People v. White*, 53 Mich. 538; or are inconclusive: *Dickerson v. Dickerson*, 50 Mich. 37; *Swift v. Plessner*, 39 Mich. 178; *Crane v. Reeder*, 25 Mich. 303; *Harbaugh v. Cicott*, 33 Mich. 241; *Johnson v. Continental Co.*, 39 Mich. 33; or if not in dispute, or if no evidence be given upon them: *Fowler v. Hoffman*, 31 Mich. 215; *Daniells v. Aldrich*, 42 Mich. 58.

Trespass lies as well for a negligent as for an intentional injury: *Bishop v. Ely*, 9 Johns. 294; *Rappelyea v. Hulse*, 7 Halst. 257; *Daniels v. Clegg*, 28 Mich. 34.

CHAMPLIN, J.  The plaintiff brought an action of trespass against the defendants jointly. The declaration is in two counts. In the first the plaintiff alleges that on the twenty-fifth day of November, 1882, while plaintiff was riding on a public highway in a buggy, the defendants, with a certain team of horses and wagon, then and there in their possession and under their control, with force and arms drove said horses and wagon against said buggy, thereby breaking the same, and throwing the plaintiff to the ground with great violence, and thus injuring him, etc. The second count alleges the same injury committed in the same manner, but setting out more in detail the special damage which he sustained thereby.

On the trial, the plaintiff gave testimony tending to show that he was traveling over the public highway from Dowagiac to La Grange, with a single horse and buggy, and overtook the defendants. Each was driving a double team attached to a heavy lumber wagon. Engle was ahead, and Lilly about

four rods behind. They were going south. At the point where he came up to them there were two traveled tracks. The east track was the most traveled, and was the one defendants were in. Plaintiff took the west track, and started to pass by at a speed of a mile in four or four and a half minutes. As he passed defendant Lilly he spoke to him, and immediately after passing, and as he was about to pass Engle, he says he heard Lilly call out to Engle to "run him,—run round him."

At the first exclamation plaintiff turned his head, and saw Lilly make a forward motion with his uplifted hand, and at the same time calling out: "Run him, or run round him." At the same instant the team driven by Engle started to run. Plaintiff says he had gotten nearly past Engle, but not wishing to run with him he reined his horse to the right, and nearly stopped him, when the rear wheel of Engle's wagon passed upon the inside of his hind buggy wheel, and capsized plaintiff's buggy, and threw plaintiff to the ground with such violence as to greatly, if not permanently, injure him. The wagons collided with such force as to break plaintiff's wagon, bend the axle forward, and leave the marks of the defendant's wheel upon the inside of the buggy wheel from the felloe to the hub.

The place where the accident happened was near the point where the two tracks come together, but there was abundant room there for teams with vehicles to pass without interference with each other.

The plaintiffs contention is, "that the trespass was willful on the part of both defendants; that if they did not intend to do him a physical injury, they intended to run him out of the road, and break or upset his buggy."

Engle had been employed by defendant Lilly as a laborer upon his farm, but his term of service expired the day before the injury to plaintiff; and on that day, in order to get money with which to pay Engle, Lilly hauled two loads of wheat to Dowagiac to sell, and Engle drove one of the teams. It appeared in testimony that one of the horses of this team belonged to David Lilly, the father of defendant Lilly, and

it was shown that this horse was nervous, and when suddenly scared starts right off quick, and if a team comes up suddenly behind them they both will start.

It was on their return home that the collision occurred. Lilly testified, and denied saying to Engle to " run him—run round him ; " but that he did call to Engle to look out for his team ; "take up ! hold on !" and that when Pigott drove up, the team jumped, and the hind wheel struck Mr. Pigott's buggy ; that Pigott turned to the right, and as he turned the wagon wheel struck the .wheel of his buggy. Engle testified that he heard Lilly halloo, and turned partly round to ascertain what he said, but before he could do so the horses started ; and he saw a man at his right, who it was he didn't know at the time, and he went a short distance, and turned to the right, and he .supposed he stopped, and he passed on. The witness was asked : "Did you understand at that time that there was a direction given you by Mr. Lilly ?"  " Did you have it in your mind at that time to make the horses run ?" These were objected to and excluded by the court as entirely improper. The witness was then asked : " Did you have it in your mind at that time to make the horses go off to the right of the track they were in ?" This was also excluded for the same reason.

These rulings are the subject of the second, third, and fourth assignments of error ; but these errors are not well assigned, for the reason that defendants' counsel was permitted immediately after, and without objection, to ask the witness whether he did at that time turn his horses out of the track to the right, and the witness testified that he did not, and also that he did not turn them to the right at all. Counsel also asked : " Did you hear Lilly give you any directions to run the team ?" and the witness answered : " I did not." " Did you see Lilly make any motion to you ?" to which the witness answered : " No, sir ; I didn't. I didn't get around far enough, if he made 400." On cross-examination the witness was asked : " Did you understand that Lilly wanted you to stop the team from the call ?" And he answered : " No, sir ; I didn't understand anything about

it. It was done so quick I didn't have time." So that it appears that he testified fully upon the subject-matter of the inquiries which were excluded, and if there was any error in the ruling it was cured by what subsequently transpired.

The fifth error assigned is upon the exclusion of the answer to the following question put to witness Lilly : "Did you at that time propose or intend to give any direction?" Although the answer to this question was excluded upon the objection of plaintiff's attorney, yet the record shows that the objection was withdrawn, and the defendant Lilly was again placed upon the stand, and inquired of fully as to his intention, and testified that he had no intention to direct Engle to run his horses, and did not have any intention to direct Engle to run his horses against or around Pigott, or any body else. Under these circumstances this assignment of error is frivolous.

The defendants' counsel submitted the following special questions for the jury to answer, viz. :

"1. Did the right hind wheel of Engle's wagon strike the inside of the left hind wheel of Pigott's buggy?
2. Which way from the main track was the buggy when it was struck?
3. Did Engle understand Lilly to direct him to run his team, or run around Pigott?
4. What did Engle do to start his team, if anything?
5. Did Engle start his team to run before the collision?
6. Did Engle's wagon leave the east track?"

The circuit judge refused to submit the first, second, fourth, and sixth questions, to which the defendants' counsel excepted.

There was no error in refusing to submit these questions to the jury. They were all upon immaterial, inconclusive, or admitted matters: *People v. White*, 53 Mich. 537 ; *Dickerson v. Dickerson*, 50 Mich. 37 ; *Swift v. Plessner*, 39 Mich. 178 ; *Crane v. Reeder*, 25 Mich. 303 ; *Harbaugh v. Cicott*, 33 Mich. 241 ; *Johnson v. Continental Ins. Co.*, 39 Mich. 33 ; *Fowler v. Hoffman*, 31 Mich. 215 ; *Daniells v. Aldrich*, 42 Mich. 58. The jury answered the third question,

that Engle did understand Lilly to direct him to run his team ; and they answered the fifth question, " Yes."

The thirteenth assignment of error is based upon the refusal of the judge to charge the jury as follows:

" No verdict can be given against Lilly, even if the jury should believe that he directed Engle to run or run around Pigott, unless the evidence shows that Engle was aware of such direction being given by Lilly, and committed the alleged trespass in consequence of such direction."

The circuit judge instructed the jury that,

" No verdict can be given against Lilly, even if the jury should believe that he directed Engle to run or run around Pigott, unless the jury are satisfied from all the evidence in the case that Engle acted under and in accordance with such direction.".

And the learned judge further instructed the jury as follows :

" But if Lilly didn't order, encourage, or countenance, or make motions to, Engle, so that Engle understood him to cause his team to run,—if he had no hand in this act,—then he is not liable, whatever may be the liability of Mr. Engle."

The modification of the request by the circuit judge was proper, and his instructions upon the liability of Lilly were proper and accurate.

The fifteenth assignment of error is as follows:

" The circuit judge erred in this, that he refused to instruct the jury that 'if Engle's wagon did not leave the east track in which he was traveling when overtaken by Pigott, then, upon the admitted facts of the case, the plaintiff cannot recover.' "

This instruction could not rightly have been given upon the admitted facts in the case. These facts showed that Pigott, being in a light buggy, attempted to pass Engle upon a public highway ; that when opposite Engle's team they started into a run ; that Pigott turned his horse to the right, and Engle's wagon collided against Pigott's and threw him out ; that there was plenty of room for Engle to pass without running against Pigott's wagon ; that Engle made no

effort to avoid a collision, or to restrain his team. Under these facts it was immaterial whether Engle's wagon left the east track or not. The fact of the collision was undisputed and incontrovertible, and that it was caused, not by Pigott running into Engle, but by Engle running into Pigott. It is not the law that a person, when driving along the public highway, is not responsible for any injury he may occasion to the person or property of another person using the same highway, if he can do so without leaving the beaten path or traveled part of the highway. The rights of travelers are mutual and co-ordinate; and it is the duty of each to so use his right of passage as not to cause injury or detriment to another having a like right.

The jury found in this case that Engle understood Lilly to direct him to run his team, and that he did start his team upon a run before the collision. There was evidence in the case which warranted the jury in coming to this conclusion; and under the facts so found, and the other evidence in the case, there is no room for doubt that their verdict was rightly rendered against Engle. As to Lilly, there was evidence in the case tending strongly to prove that by sign and words he directed Engle to run his team when Pigott was about to pass.

In addition to the instructions with reference to Lilly's liability above noticed, the circuit judge charged as follows:

"If Engle willfully or intentionally drove against plaintiff's buggy, Lilly would not be liable for such act, unless he directed, advised, or counselled, or encouraged it."

And again:

"Did Lilly encourage or cause this man Engle to run his team, and in so running did they run into Pigott? These are matters for you to determine. From all these facts given to you, you make up your verdict in this case. You take the whole testimony; take the fact of their turning out of the road; what was said and what was done; what motions were made by witnesses here; take into consideration the fact of these witnesses who saw motions,—these three ladies; the fact that the team started about that time,—all the facts together,—and say from all this whether you believe that

Mr. Lilly encouraged Engle to run his team, or whether the team became frightened and ran away. These are all matters of fact for you to determine."

And again :

"You take the whole testimony together, and from that make up your minds how this matter occurred ; whether it was an accident entirely ; whether the horses were frightened and uncontrollable ; whether Mr. Engle neglected to control them ; whether Mr. Lilly advised this trespass or not. All these things you take into consideration, and from them say whether either or both of them are guilty or not guilty ; and if guilty, the amount of damage he has received."

There are some portions of these instructions which perhaps may be open to the criticism which counsel for defendants has made upon them ; but, taken as a whole, they state the law of the case correctly ; and I cannot say that the jury were in any manner misled by them. The material points in issue were clearly stated, and the jury's attention particularly called to them, and there was evidence in the case to fully justify the verdict which they rendered.

The judgment of the circuit court is affirmed.

The other Justices concurred.