## LUCIUS C. RAND *vs.* CATHARINE SYMS.

Berkshire.    September 11, 1894. — October 18, 1894.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Negligence — Law of the Road — Discretion of Justice — Argument to Jury.*

In the conduct of a trial for injuries and damages caused by the plaintiff's gig being forced on the truss of a bridge and overthrown in consequence of the alleged negligent driving by the defendant of another conveyance, it is within the discretion of the presiding justice to prevent the plaintiff's counsel from using for the first time during his argument to the jury representations of the truss and gig, and to order their removal from the presence of the jury.

A person driving is not bound under all circumstances to keep to the right of the centre of the road, or to look behind him, when passing from one side to the other, but if he has reason to believe that a vehicle is behind him, or at his side, it is his duty not to obstruct it, and to use reasonable care in passing from one side of the road to the other not to injure it and its occupants, and in the event of an accident or collision it is for the jury to say whether the circumstances were such that the person driving in advance should, in the exercise of reasonable care, have looked behind or sideways.

TORT, for personal injuries occasioned to the plaintiff, and for damages to his horse and conveyance. The declaration alleged

that the defendant so negligently drove her horse, attached to a conveyance, that the plaintiff, his horse and conveyance, were crowded off the road and against a bridge, the conveyance thrown over, and the plaintiff thrown out and injured, and his horse and conveyance damaged. The answer was a general denial.

At the trial in the Superior Court, before *Richardson*, J., there was evidence for the plaintiff tending to show that he drove upon the highway, where the defendant's conveyance was, from a side street which ran substantially at right angles thereto, passing in the rear of the defendant's conveyance to the left-hand side of the highway, the defendant's conveyance then being upon the right-hand side. From this point, the plaintiff followed the defendant's conveyance a distance of about sixteen rods, and at a distance of from one to two rods in the rear gradually overtaking the defendant's conveyance, until at a point just west of the entrance to the bridge, when the head of the plaintiff's horse was about opposite the forward wheel of the defendant's conveyance, which was about to enter upon the right-hand side of the bridge. The plaintiff was going at the rate of about five miles an hour and the defendant at about four miles an hour, and there was ample space upon the left-hand side for the plaintiff to pass the defendant, and this the plaintiff was then attempting to do. After the defendant's conveyance had entered upon the bridge it turned from right to left abruptly, and obliquely so that it was upon the left-hand side of the bridge and took up so much of the space on that side that there was not room for the plaintiff to pass without a collision with the defendant's conveyance. Thereupon the plaintiff, in attempting to avoid a collision, immediately reined in his horse to the left, so that in going a distance of about four feet, and before he was able to stop his horse, the north wheel of the plaintiff's gig was forced upon the north truss of the bridge for a distance of about three feet, and the gig tipped over toward the south, and the plaintiff was thrown out and injured, and the plaintiff's horse thrown down. Neither the plaintiff's horse nor his conveyance collided with the defendant's horse or conveyance, but the plaintiff's horse upon getting up passed over the bridge with the gig drawn upon the hub of the south wheel, and at the time the plaintiff was so thrown out the defendant's driver backed his conveyance over upon the right-

hand side of the bridge. The plaintiff's gig in overturning upon the hub of the south wheel and passing the defendant's conveyance occupied less space than the gig would have occupied if right side up. The diameter of the wheels of the plaintiff's gig was considerably less than the width of the gig from the outside of the hubs. The carriage path of the bridge was admitted to be eighteen feet and two inches wide.

There was evidence for the defendant tending to show that she entered upon the right hand side of the bridge and at no time passed over upon the left hand side, and she and her driver testified that neither of them saw the plaintiff, or knew that he was attempting to pass, until they saw him fall near her forward wheel, and that neither she nor her driver when entering upon the bridge, or while they were upon it, before the accident, looked back to see whether the plaintiff or anybody else desired or was attempting to pass. The defendant also testified that at the time of the accident her horse was walking, and that neither she nor her driver turned their horse and conveyance from the right-hand side of the bridge to the left-hand side, for there was no person or team approaching them in front, and they had no knowledge of the plaintiff or any one being behind them desirous of passing them, and there was no necessity for them to leave the right-hand side of the bridge.

In the argument to the jury, the defendant's counsel claimed that the plaintiff's gig in tipping over must have occupied a much greater space between the north truss of the bridge and the defendant's conveyance than it would if right side up, and that, as there was no collision with the defendant's conveyance, the latter must have been upon the right-hand side of the bridge; and in illustrating his argument upon this point he exhibited to the jury a sketch representing the plaintiff's gig standing right side up and also tipped over. The plaintiff's counsel during his argument to the jury, and for the purpose of illustrating the laws of motion as applied to the plaintiff's conveyance, and for the purpose also of illustrating his argument that the plaintiff's gig in tipping over would not occupy the space claimed by the defendant's counsel, had constructed and placed upon the table in front of the jury and then introduced for the first time a rough representation of the truss of the bridge and of a two-wheeled gig with shafts, which truss and gig so presented did

not represent the proportionate height of the plaintiff's gig to the truss of the bridge. The defendant's counsel objected to their introduction; and the plaintiff's counsel stated to the court that he did not desire or propose to use them in any sense as evidence, or to claim that they were a correct representation of the truss of the bridge or of the plaintiff's gig, but merely desired to use them to illustrate his claim that the gig in tipping over would not occupy more space than if right side up. The judge ruled that the representations of the truss and gig, not having been introduced in evidence or offered earlier in the case, should not be then used by the plaintiff's counsel in the way proposed, and upon the request of the defendant's counsel, and against the objection of the plaintiff, ordered them removed from the presence of the jury, stating that if they had been offered before the counsel for the defendant had argued, they would probably have been admitted for the purpose suggested; to which refusal and order of the judge the plaintiff excepted.

The plaintiff requested the judge to rule as follows:

"1. If the defendant's conveyance was being driven so that any part or all of the same extended over the middle line of the travelled path of the way, or over the middle line of the bridge, then such conveyance was in that part of the way or bridge reserved by law for the use of travellers who might meet the defendant going in the opposite direction, or travellers who might desire to pass the defendant going in the same direction, and if the defendant or her driver drove from the right hand side of the bridge to the left-hand side of the same without first attempting to ascertain whether the plaintiff was behind and about to pass the defendant's conveyance, and the position of the defendant's conveyance so taken was the proximate and sole cause of the injury, the plaintiff is entitled to recover if at the time of his injury he was in the exercise of ordinary care and prudence. 2. If the defendant's conveyance, or any part thereof, was upon the left-hand side of the middle line of the travelled part of such way, or the middle line of said bridge, without necessity such as to avoid danger of collision with other teams, persons, or objects, then such conveyance was unlawfully there. If the defendant and her servant took no pains to ascertain whether the plaintiff was behind and attempting to pass on the left-hand side, and if this was the cause of the plaintiff's injury,

then he is entitled to recover if he was in the exercise of due care at the time.   3. If the defendant's conveyance was on the left-hand side of the bridge this fact is some evidence of negligence of the defendant.   4. If, at the time the plaintiff attempted to pass the defendant's conveyance upon the bridge, there was ample room for him to do so upon the left, he had a right to make the attempt, and such attempt was not negligence, and he was not bound to attempt to pass upon the right.   5. If what the plaintiff did under all the circumstances was that which a man of ordinary care and prudence would have done, then he was not guilty of negligence."

The judge gave the fifth request, but refused to give the other requests, except as hereinafter stated, and among other instructions gave the following:

"Among the plaintiff's requests for rulings is this: ' If the defendant's conveyance was on the left-hand side of the bridge this fact is some evidence of negligence of the defendant.'   If that is a fact, it is some evidence of the negligence of the defendant, but I cannot give that without some qualification, because . . . a party driving along a road or across a bridge has a right, unless he is about to meet somebody, or unless somebody is behind and wants to pass, to go in the centre of the road, or on the left hand side, or on the right hand side, just as his convenience or pleasure dictates.

"It is only when he is about to meet somebody that the law obliges him to go to the right, and then perhaps I will add, in the other case, when a party is behind trying to pass him, and he has some notice or knowledge that such person is trying to pass him, that he ought to turn to the right or left, whichever the case may be; ordinarily, of course, as the law says, a party passing should pass to the left, and it would naturally follow, although the law does not say so in express terms, that the party in front would naturally turn to the right, because that would be a proper thing for him to do.   But at other times when you are driving . . . I do not understand it to be your duty to drive on the right-hand side of the road always, under all circumstances, everywhere.   Nor do I understand it to be the duty of the party driving along a highway to look behind him or see what is going on behind him.   His duty naturally would be to look ahead, in the street.

" The plaintiff also asks me to rule, ' If, at the time the plaintiff attempted to pass the defendant's conveyance upon the bridge, there was ample room for him to do so upon the left, he had a right to make the attempt, and such attempt was not negligence, and he was not bound to attempt to pass upon the right. That might or might not be so. . . . If one desires so to pass a person, it might depend upon the circumstances, the situation, and . . . the facts at the time."

The plaintiff at the close of the instructions made the following oral request : " It was the duty of the defendant before crossing from the right to the left hand side of the bridge to look behind to see whether the plaintiff or some other person were not about to pass."

Thereupon the judge further instructed the jury :

" I simply repeat to you the general duty of a man to look on either side of him, or behind him, under some circumstances. . . . I can imagine that if a person were driving through a crowded way, like Washington Street in Boston, where there is a row or two of cars or carriages on either side or behind, he might have to look almost everywhere ; and there might be cases where you are driving along a country road, or across a bridge, where your whole duty would be accomplished if you looked ahead. I would say, if there were any circumstances in the case which in the exercise of due care required the defendant to look behind as well as forward, they are for you to consider. . . . It is a question for the jury whether the defendant in this case should have looked behind or sideways; and in determining that question you are to bring your knowledge, intelligence, and experience here, and exercise it upon these cases. . . . There may be, or might be, circumstances which would require a party to turn out to the right, without knowing there was any person behind wanting to pass, but I do not undertake to give or state such circumstances."

Thereupon the plaintiff's counsel orally asked the judge to rule that, before a party can take the risk of driving from the right-hand side to the left-hand side of the bridge, he must look behind him to see if anybody desires or is attempting to pass him upon the left; and the judge then gave the following further instruction to the jury :

" I have just stated that there might possibly be circumstances

which would require a man to look, or turn to the right, . . . without notice that there was any person behind, . . . but I do not undertake to state a case to the jury. I have already stated that when a party is driving, and another person comes up behind and makes a request to go by, or undertakes to go by, and the other party sees him or has notice of his presence, then there may be a duty on the part of the person in front to take such course as may avoid a collision and avoid injury."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*M. E. Couch & C. J. Parkhurst*, for the plaintiff.

*T. P. Pingree & H. L. Dawes, Jr.*, (*C. E. Burke* with them,) for the defendant.

MORTON, J. It was not contended at the trial by the plaintiff's counsel that the representations of the truss and of the gig were correct. He expressly stated that he did not claim that they were. They were not a part of the evidence in the case. The defendant had no opportunity to cross-examine concerning them or to criticise them; and although the only use which the plaintiff's counsel proposed to make of them in his argument was to illustrate, in reply to the argument of the defendant's counsel, the amount of space which the gig would occupy in tipping over, we think that it was competent for the court, in the exercise of a reasonable discretion regarding the conduct of the trial, to prevent the plaintiff's counsel from using them as he proposed, and to direct their removal from the jury's presence. *Commonwealth* v. *Piper*, 120 Mass. 185. *Probert* v. *Phipps*, 149 Mass. 258. *Farnum* v. *Pitcher*, 151 Mass. 470, 476. *Commonwealth* v. *Poisson*, 157 Mass. 510. *Commonwealth* v. *Thompson*, 159 Mass. 56, 58. This is very far from saying, as the plaintiff in effect contends must be the case if the action of the presiding judge is sustained, that the court can interfere to any extent that it sees fit with the argument of counsel. See *Commonwealth* v. *Brownell*, 145 Mass. 319.

The instructions given by the court were sufficiently favorable to the plaintiff, and those requested by him were properly refused. The defendant was not bound under all circumstances to keep to the right of the centre of the road, nor to look behind her when passing from one side to the other. *Lovejoy* v. *Dolan*,

10 Cush. 495. *Meservey* v. *Lockett*, 161 Mass. 332. If a team was approaching in the opposite direction, it was her duty to turn to the right, and if she had reason to believe that the plaintiff was behind her, or at her side, it was her duty not to obstruct him, and to use reasonable care in passing from one side of the road to the other not to injure him. It is not the duty of a traveller under all circumstances, before crossing from one side of a sidewalk or road to the other, to look behind him or sideways before doing so. The court in substance told the jury that it was for them to say whether the circumstances were such that the defendant in the exercise of reasonable care should have looked behind or sideways, and the jury by their verdict have found that they were not. The jury have settled the facts against the plaintiff, and we discover no error in law on the part of the court.                    *Exceptions overruled.*