BRENNAN v. RICHARDSON.

(Supreme Court, Appellate Division, Second Department. March 7, 1899.)

1. HIGHWAYS—NEGLIGENCE OF TRAVELERS—PLEADING—EVIDENCE.
The complaint alleged that defendant, when plaintiff attempted to drive past him on the road, drove his own horse against plaintiff's horse, so as to force the latter against the curb and upset the wagon. Plaintiff testified that defendant drove ahead, and then turned around at right angles, driving plaintiff upon the curb, and on cross-examination he stated that defendant turned his horse's head up against plaintiff's horse. *Held*, that defendant was liable, if negligent, though there was no actual collision.

2. SAME.
A driver on a road, who knows that one behind wishes to pass, must exercise reasonable care not to injure the latter.

3. APPEAL—HARMLESS ERROR—INSTRUCTIONS.
Plaintiff, who attempted to drive past defendant on the road, claimed that defendant so managed his horse as to force plaintiff against the curb, whereby he was injured. The court erroneously instructed that plaintiff could not recover unless there was an actual collision, that defendant owed no duty to plaintiff, and, further, that the jury might find from the evidence that plaintiff might have kept behind. A verdict was found for defendant. *Held*, that the court's obvious opinion on the issues probably controlled the verdict, and hence the error was not harmless.

Appeal from trial term.

Action by John Brennan against Charles C. Richardson. Fi�578 a judgment entered on a verdict for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John C. Harrigan, for appellant.
John H. Ferguson, for respondent.

WILLARD BARTLETT, J. This action arose out of an accident which occurred to the plaintiff while driving along a street in the city of Yonkers, upon which the defendant was also driving, in the same direction, a short distance ahead of the plaintiff and his wife. According to the plaintiff's testimony, he approached the defendant's vehicle while the defendant was walking his horse, and undertook to pass the defendant on the right. Thereupon, he says, the defendant "started his horse up suddenly and got ahead of me, and then turned his horse's head up against my horse's head, and the horse got excited and ran into the curbstone, and the wagon was turned over, and both of us were thrown out on the sidewalk." In another place the plaintiff says: "At the time I attempted to pass Mr. Richardson, there was room for two or three wagons to pass between him and the curb. When I attempted to pass, he started his horse up suddenly, drove ahead of me, and then turned around at right angles and drove me onto the sidewalk. After he did that, he drove away, and I could see nothing of him until I got up." The defendant gave a very different account of the accident, and ascribed it solely to a collision between the plaintiff's wagon and the curb at a bend in the road. He swore positively that he never touched the plaintiff, and that he was more than 40 feet ahead of him when the plaintiff upset. "I am positive," he said, "that I didn't touch him, and he didn't touch me. It would not be possible for him to strike my wagon without overturning it."

In charging the jury the learned city judge instructed them that if they determined the defendant's story to be true, and that he never struck the body of Mr. Brennan's horse, they must find a verdict in favor of the defendant. To this instruction an exception was duly taken by counsel for the plaintiff, who asked the court to charge the jury that even if they should believe that Mr. Richardson's horse did not actually touch Mr. Brennan's horse, but still believed that Mr. Richardson's carelessness forced Mr. Brennan over against the curb, and that Mr. Brennan, in attempting to avoid him, went against the curb and upset, they might render a verdict in favor of the plaintiff. In response to this request the learned judge said: "I decline to charge the evidence. The jury can draw their own conclusions." And an exception was taken in behalf of the plaintiff to his refusal to charge as requested. I think this refusal was erroneous, and that the plaintiff was entitled to have the jury instructed in accordance with his counsel's request. The gravamen of the plaintiff's complaint against the defendant was that the defendant, when the plaintiff was endeavoring to pass him, either willfully or negligently drove his own horse in such a manner as to force the plaintiff's horse over against the side of the street and upset his wagon. While the complaint does allege an actual collision between the defendant's horse and wagon and the plaintiff's horse, that feature of the accident was mentioned only incidentally in the plaintiff's testimony, and it was not until his cross-examination that he stated distinctly that the head of the defendant's horse touched the head of his horse. Under the pleadings and the evidence, the case did not necessarily turn upon the question whether there was actual

contact between the horses or vehicles of the respective parties; and if the accident was caused by the negligence of the defendant in the management of his horse and vehicle, although they did not in fact collide with those of the plaintiff, I see no reason why the plaintiff should not have been allowed to recover. The tone of the charge throughout was much more favorable to the defendant than to the plaintiff. The evidence which tended to establish the defense was emphasized by the learned judge, who even described the effect of some of such testimony upon his own mind. He instructed the jury that Mr. Richardson did not owe any duty to Mr. Brennan, that all he had to do was to keep his own horse right along in the beaten track of the highway, and that, if Mr. Brennan wished to pass Mr. Richardson's carriage, it was his duty to get by it safely and successfully, as any prudent man might under the same circumstances. Although no exception appears to have been taken to the instruction that the defendant did not owe any duty to the plaintiff, it seems clearly to have been erroneous, in view of the plaintiff's testimony that the defendant saw him as he approached. When made aware of the desire of the rear driver to pass, the driver who was ahead owed a duty to exercise reasonable care not to injure the driver overtaking him. "The movement of carriages passing on our turnpike roads in opposite directions," says Gibson, C. J., in a leading Pennsylvania case, "is regulated by special enactment, but there is no positive law to regulate the passing of those who are traveling in the same direction." He shows that the purpose of the enactment as to vehicles meeting one another is to avoid collisions which might otherwise ensue from the misapprehension of each driver as to the course which the other intended to take, and points out that no such uncertainty arises in respect to carriages moving in the same direction. If there be convenient room to pass on any particular part of the road, the rear driver cannot complain. "If there be not, it is doubtless the duty of the other to afford it, on request made, by yielding him an equal share of the road, if that be adequate and practicable. If not, the object must be deferred till the parties arrive at ground more favorable for its accomplishment." Bolton v. Colder, 1 Watts, 360. Immediately after the jury had been instructed that the defendant owed the plaintiff no duty, they were told further that they "might find from all the evidence that Mr. Brennan might have kept behind Mr. Richardson, and not attempted to pass him while driving downhill so fast." By this and other portions of the charge the learned judge intimated to the jury so clearly his idea of what they ought to do as to render it exceedingly probable that his obvious opinion on the issues of fact controlled the verdict. The case, therefore, is not one in which it can be held that erroneous instructions could not have been harmful to the appellant; for here, independently of any exceptions, it is quite plain that justice requires a new trial.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.