HARRY M. HACKETT, APPELLEE, V. ALAMITO SANITARY DAIRY COMPANY, APPELLANT.

FILED NOVEMBER 14, 1911. No. 17,009.

1. **Highways: LAW OF THE ROAD.** Prior to the enactment of section 147, ch. 78, Comp. St. 1911, the rule as to the rights of persons driving in the same direction in a public road or street, and seeking to pass each other, was that ordinarily it is the duty of each driver to keep the proper side of the road, but this is not absolute. He is not bound to keep his side, but if he does not do so he must use more care and keep a better lookout to avoid collision than would be necessary were he on the proper side.

2. ———: ———. In a narrow street, he must not unnecessarily block the way or crowd other travelers to one side, and he must use the highway in such a manner as not unreasonably to deprive other travelers of their equal right to the use of the street.

3. ———: ———: **NEGLIGENCE: QUESTIONS FOR JURY.** These rules, however, are subject to exception. It is impossible to lay down a hard and fast rule applicable to all situations which may arise in the streets of a city, and, even though a deviation from the rule of the road has taken place, the question whether the defendant or his servants have been guilty of negligence, or the plaintiff guilty of contributory negligence, is ordinarily one for the jury.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Edgar M. Morsman, Jr.,* for appellant.

*Albert W. Jefferis* and *F. S. Howell, contra.*

LETTON, J.

Seventeenth street in the city of Omaha is 60 feet wide

from curb to curb and is paved with asphalt.  During the construction of a building on the west side of the street, a high board fence was built at a distance of 40 feet from the west curb, leaving the street at this point accessible for vehicular traffic only 20 feet wide.  On June 21, 1909, a wagon belonging to the defendant, loaded with milk cans, was being driven northward on Seventeenth street between Harney and Farnam streets along this 20-foot roadway.  The view of the driver to the sides or backward was unobstructed.  Two boys, Harry Hackett, 11 years of age, and George Lemon, 14 years old, mounted upon bicycles, were also passing along this street in the same direction.  Defendant's team was proceeding at a slow walk, while the boys were riding at a rate of about 8 miles an hour, the Lemon boy being about 5 feet in front of Hackett.  They attempted to pass the wagon on the left side.  As they were passing between the wagon and the fence, the horses swerved towards the west approaching to within a few feet of the fence.  The Lemon boy passed through between the horses and the fence safely; but, when Hackett reached the front part of the wagon or the rear of the horses, the handlebars of his wheel struck the fence and he fell in such a manner that the front wheel of the wagon ran over his arm and crushed it.  There was testimony that Lemon called out to the driver, "Look-out," as he passed the horses' heads, that Hackett also called out  as he reached the front wheels, but the driver denies hearing any warning, except from Lemon, until after the boy fell.  There is also a conflict in the evidence as to the exact position of the wagon before the team approached the fence, but it was nearer the fence than the curb.  This action was brought to recover damages for this injury on account of the negligence and carelessness of the driver.  The plaintiff recovered a judgment for $5,000, and the defendant has appealed.

The principal allegations of negligence in the petition, divested of circumlocution, are as follows:  That the defendant's servant, at the time when plaintiff undertook to

pass its horses and vehicle, negligently suffered the vehicle to be upon part of the 20-foot highway west of the center line thereof, and, as the plaintiff was attempting to pass, negligently caused the horses and vehicle to turn suddenly to the westward toward the immediate path in which plaintiff was traveling, without any warning to the plaintiff, and negligently, carelessly and recklessly drove said team of horses and vehicle so that the same collided with the plaintiff and the bicycle upon which he was riding. It is further charged that there was negligence on the part of the driver, in that, at and before the time of striking the plaintiff, he was not giving his attention to his team, and was not giving his attention to the plaintiff or other travelers who were about to pass the vehicle, when by the exercise of ordinary care he could have discovered the plaintiff and avoided the collision. The answer was a general denial and a plea of contributory negligence.

Defendant contends that the law is that "a person driving along the highway owes no duty to another coming up in the rear, unless he knows that such other person is coming up and desires to pass. If the person in the rear desires to pass to the front, it is his duty to make such desire known to the person in front, and then, if conditions of the road permit, the person in front should pull to one side or the other and give the person in the rear the opportunity to pass. * * * A person traveling on the highway has the absolute right (so far as persons in the rear are concerned) to use any portion of the highway he desires, and this right to use any portion of the highway is not limited because another vehicle comes up in the rear." Defendant's counsel cites a number of cases as supporting these views, most of which we will hereinafter examine. He calls our attention particularly to the case of *Holt v. Cutler*, 185 Mass. 24, where the facts were that a girl riding a bicycle and attempting to pass a wagon ahead of her by going between the wagon and the curb—a distance of five feet—was thrown from the wheel by the wagon swerving toward her, the driver being unaware of her proximity.

The report, however is very meager, and does not indicate whether she tried to pass on the proper side of the wagon, nor whether the street was a narrow one; so it gives no light on the question before us.

The determination of this case requires a consideration of the common law with respect to the rights of one attempting to pass another driving along a road or street in front of him, since at the time of the accident there was no statute in force in this state on this point. The legislature has since acted on this subject by the passage of section 147, ch. 78, Comp. St. 1911, at least with respect to motor vehicles.

The decisions of the various courts are somewhat confusing; some of them being based upon statutes, and others are not in harmony with each other. In England the rule of the road requires persons driving, meeting other vehicles, to keep to the left, and that, in passing, the foremost bears to the left while the other passes on his right; while in the United States and upon the continent of Europe the rule is that persons meeting must keep to the right, and the usual custom is to pass to the left of a vehicle ahead.

In determining the true rule, we will endeavor to discriminate and to confine our examination to cases where accidents have been caused when passing others driving in the same direction. We will first examine the English cases bearing upon the question whether there is any duty to keep on one side of the road, and, if so, how far the obligation extends. In *Wakeman v. Robinson*, 8 Moore (Eng.) 63, the accident was caused by defendant driving an unruly horse between two vehicles on the wrong side of one of them, when the horse plunged and caused an injury to the plaintiff's horses. A judgment for plaintiff in trespass was sustained.

In *Pluckwell v. Wilson*, 5 C. & P. (Eng.) *375, Justice Alderson said: "A person was not bound to keep on the ordinary side of the road; but that, if he did not do so, he was bound to use more care and diligence, and keep a better lookout, that he might avoid any concussion, than

would be requisite if he would confine himself to his proper side of the road."

*Wordsworth v. Willan,* 5 Esp. (Eng.) 273: Plaintiff was on horseback on the proper side of the road; defendant's coach drove furiously down the hill which the plaintiff was ascending, and the horse, becoming frightened, became restive and jumped about, when the coach ran against him and broke his thigh. Defendant contended there was ample room left for the horse, and that the accident was caused by defendant's horse's restiveness, and not by neglect of the driver. Plaintiff contended that the carriage should have kept on the proper side of the road, and that even if the restiveness of the horse contributed to the accident the defendant was liable. Mr. Justice Rook said that "he could not lay it down that a carriage driver was under every circumstance to keep exactly to the left, or, as it was called, the proper side of the road; if there was no interruption of any other carriage, or the road was better, public convenience did not require that the driver should adhere to that law of the road; he took the rule of law to be that if a carriage coming in any direction left sufficient room for any other carriage, horse, or passenger, on its side of the way, it was sufficient; but it was a matter of evidence if the defendant had done so. The driver was not to make experiments, he should leave ample room, and, if an accident happened from want of that sufficient room, he was no doubt liable. He, therefore, left it to the jury to say whether the accident had not been occasioned by the defendant's coachman having driven so near to the plaintiff's horse; that the action arose from that cause." But in *Wayde v. Lady Carr,* 2 Dow. & Ry. (Eng.) 255, the facts were that defendant's carriage was on the wrong side of the road, and his coachman tried to pass on the near, instead of the off, side,.according to English usage. The court said: "In the crowded streets of a metropolis where this accident happened, situations and circumstances might frequently arise where a deviation from what is called the law of the road would not only be justi-

fiable, but absolutely necessary. The question in this case was a question of negligence. Of this the jury were the best judges, and, independently of the law of the road, it was their province to determine whether the accident arose from the negligence of the defendant's servant." The English courts also hold that the rule as to a carriage being on the proper side of the road does not apply with respect to foot-passengers; for, as regards foot-passengers, a carriage may go on either side. *Cotterell v. Starkey*, 8 C. & P. (Eng.) *691; *Lloyd v. Ogleby*, 5 C. B. n. s. (Eng.) 667.

The rule in America does not seem to be clear and well settled as to the duty of one who is driving a vehicle where others may desire to pass. It may be said that a number of cases based on statutes, and applying to cases of meeting-vehicles, have been cited and applied by some writers as establishing a rule where persons were driving in the same direction. This has, no doubt, led to some of the confusion.

*Bolton v. Colder*, 1 Watts (Pa.) 360, holds that it is not the law that, where carriages are passing in the same direction, the leading carriage should be inclined to the right and the other to the left, but that the law is that "a traveler may use the middle or either side of a public road at his pleasure, and without being bound to turn aside for another traveling in the same direction, provided there be convenient room to pass on the one hand or on the other." The following cases, in the main, hold the same doctrine, but perhaps not all so positively: *Foster v. Goddard*, 40 Me. 64; *Clifford v. Tyman*, 61 N. H. 508; *Elenz v. Conrad*, 123 Ia. 522; *Brennan v. Richardson*, 56 N. Y. Supp. 428; *Altenkirch v. National Biscuit Co.*, 111 N. Y. Supp. 284; *Rand v. Syms*, 162 Mass. 163; *Meservey v. Lockett*, 161 Mass. 332; *Bierbach v. Goodyear Rubber Co.*, 15 Fed. 490. Mr. Thompson (1 Thompson, Negligence, secs. 1289, 1290) seems to be of the opinion that "the 'law of the road' does not apply in the case of teams *going in the same direction*" —citing *Clifford v. Tyman, supra.* He criticises the doctrine of *Bierbach v. Goodyear Rubber Co., supra,* that a

driver is under no obligation to give notice to those behind him when he seeks to turn, and that the rule of reasonable care exacts a greater degree of attention from the driver of the team behind than from the driver that turns out, saying: "More or less doubt attends the foregoing exposition of the law." Mr. Elliott (2 Elliott, Law of Roads and Streets, sec. 1084) says, after stating the doctrine of *Bolton v. Colder, supra,* and citing a number of other cases: "The only rule of general application that can be laid down is that he who attempts to pass another going in the same direction must do so in such manner as may be most convenient under the circumstances of the case, and if negligent, and damage results to the person passed, the former must answer for it, unless the latter by his own recklessness or carelessness brought the disaster upon himself. There are, however, statutes in some jurisdictions regulating the mode of passing, especially in regard to automobiles, and it is believed that both under such statutes and in their absence the usual mode under ordinary circumstances is for the traveler in the rear to pass on the left of the vehicle in advance."

In Massachusetts, it was first held that if a person driving left the proper side of the street and interfered with others, he was responsible as a matter of law for the consequences. *Fales v. Dearborn,* 1 Pick. (Mass.) 345. But it was afterwards settled in that state that a person is not negligent, as a matter of law, by driving on the wrong side of the street. *Wood v. Boston Elevated R. Co.,* 188 Mass. 161; *Galbraith v. West End Street R. Co.,* 165 Mass. 572. On the other hand, in *Avegno v. Hart,* 25 La. Ann. 235, 13 Am. Rep. 133, it was held that it was the duty of the driver, seeking to pass another, to go to the left, and it was proper for the leading driver to pull his horse to the right, in order to allow the one attempting to pass him to pass on the left side.

In *Lonergan v. Martin,* 23 N. Y. Supp. 968, the facts were that, while driving along a street behind defendant, plaintiff turned out where there was sufficient room for

the purpose of passing; defendant then, without warning, suddenly turned his horse against the plaintiff's horses, forcing them against an engine which was standing near the curb, then drove ahead, his hind wheel passing over a hoof of plaintiff's horse and injuring him. The trial justice dismissed the complaint, but on appeal to the general term it was held that the questions of negligence and contributory negligence should have been submitted to the jury.

From a consideration of all these cases, it seems that no definite rule as to the respective duties of persons passing or seeking to pass each other with vehicles has been adopted by all courts. We are inclined, however, to adopt the rule, which seems to be based upon sound reasons, that it is ordinarily the duty of each party to keep the proper side of the road, but this is not absolute. He is not bound to keep his side, but, if he does not, he must use more care and keep a better lookout to avoid collision than would be necessary, were he on the proper side. In a narrow street he must not unnecessarily block the way or crowd other travelers to one side, and he must use the highway in such manner as not unreasonably to deprive other travelers of their equal right to the use of the street. *Pigott v. Engle*, 60 Mich. 221. In a busy city it is impossible to lay down a hard and fast rule, and whether negligence existed under the circumstances of the case is ordinarily a question for the jury. The instructions given by the trial court were fully as favorable to the defendant as it was entitled to as to the driver's right to occupy any part of the street, and we find no error in giving them, or in refusing those requested. The proof shows that when the accident happened defendant's wagon was nearer the left side of the very narrow street than the right, that there was nothing to prevent it from being driven farther to the right, and thus leaving plenty of room for other vehicles to pass between it and the fence; that, without any apparent reason, the driver either drove, or allowed the horses to swerve, to the west in such manner as to come close to the

fence and prevent any person driving or riding behind him from passing on their proper side of the street and of his vehicle. We think it was for the jury to say whether the act was negligent or not, considering all the circumstances.

And so as to the question of contributory negligence, the streets are intended to be used by children as well as adults, and the question of whether, under all the circumstances, the plaintiff at the time he started between the wagon and the fence was justly chargeable with knowledge of the fact that the driver might swing his horses toward the fence, and thus bar a passageway on the proper side, was also a question for the jury. *Foote v. American Product Co.*, 195 Pa. St. 190, 49 L. R. A. 764. The law upon this point was laid down in the instructions as favorably to defendant as it was entitled to.

We find no error in the record of which defendant is entitled to complain, and the judgment of the district court is

AFFIRMED.

BARNES and FAWCETT, J. J., dissenting.

We are unable to give our assent to the conclusion reached by the majority of our associates. As we view the record in this case, the evidence fails to establish negligence on the part of the defendant. It appears that the driver of defendant's team was proceeding north on Twentieth street in the city of Omaha at the time of the accident in a reasonable and proper manner; that he had no knowledge of the presence of the injured boy in the rear of his wagon, or that the boy was attempting to pass between the wagon and the fence, until he was opposite the front wheels of the wagon; that when the driver first saw the boy it was then too late for him to avoid the accident, and the proximate cause of the injury complained of was the attempt of the boy to pass between the defendant's wagon and the fence, when there was ample room to pass in safety on the other side of the wagon. We are therefore of opinion that the evidence does not support the verdict, and the judgment of the district court should be reversed.