Norman B. Probert *vs.* Walter T. Phipps & another.

Middlesex.   March 13, 1889. — May 11, 1889.

Present: Morton, C. J., Field, Devens, W. Allen, & Holmes, JJ.

*Master and Servant — Due Care — Experiment before Jury.*

A boy, fifteen years old, while attempting to stop one of two machines in a mill, upon which he was at work, was caught in gearing projecting from the other, and was injured. At the trial of an action to recover for such injuries, there was evidence that the machines stood side by side, the starting apparatus of one and gearing on the other so projecting from the side of each as to leave a passageway about a foot wide between them; and he testified that before the accident he had learned how to run the machines, and had been warned to be careful and not get caught; that he knew if he got near revolving machinery he would get caught by it; that in starting and stopping the machines he used this passageway; that he had to go there often, and was familiar with the place; that the gearing was uncovered; that he knew he was likely to be caught, and tried to guard against it in stopping or starting them; and that he had to stoop down in doing so, and had then in mind the danger of being caught. *Held*, that he was not in the exercise of due care, and could not maintain an action against his employer for the injury so received.

TORT for personal injuries sustained by the plaintiff while in the defendant's employment. Writ dated November 4, 1887. Trial in the Superior Court, before *Bishop*, J., who allowed a bill of exceptions, which, so far as material, is as follows.

The plaintiff testified that he became fifteen years old in February, 1887 ; that on June 6, 1887, he went to work in the defendants' silk mill upon filling-machines run by steam power, never having worked on machinery before; that his work was to spread out upon an extension raw silk, which was then drawn in by gearing and cog-wheels so as to spread the raw silk around the outside of a large cylinder under several rows of teeth ; that he then cut the silk below each row of teeth into strips, and took the silk off upon boards used for the purpose, and carried it to another part of the mill for further manufacture; that he tended two filling-machines, which stood side by side, with a passageway between them just wide enough for him to get through ; that in stopping and starting the machines he went in between them by this passageway; that in order to put the raw silk on the extension he stopped a machine by shifting the belting on the side of the machine by which the power was transmitted to it, and then started it in the same way ; that the machine ran until the silk was wound around the cylinder; that he then stopped it again to cut and take off the silk ; that the gearing of one machine was opposite to the apparatus for starting and stopping the other ; that there was no boxing or other protection of any kind on the gearing; that when he was first employed by the defendants, James Imeson, the boss of that part of the mill, told him to " look out and be careful and not get caught," but did not tell him what he was to be careful about, or what he was not to get caught in, and turned him over for further instruction to Thomas Trainer, a boy of about his own age, who ran a third filling-machine, which stood beside the other two but was somewhat different from them ; that some of the men in the mill told him to look out and be careful and not get caught; that he stayed for about half a week with Trainer, who showed him how to run his machine, and for the rest of the week he assisted another boy in running the other two machines, and was then himself put in charge of them ; that on June 27, 1887, in going between the machines to stop one of

them, his trousers were caught in the gearing which projected from the other, and which was moving rapidly, and his left leg was drawn into the gearing from the knee down to the ankle, and so injured that amputation was necessary.

On cross-examination he testified that he had attended school until he was fourteen years of age; that he had worked for over a year in making fireworks, where he had to be very careful; that his father was a machinist, and employed in machine works, which he had visited in doing errands, and had there seen machinery in operation; that he did not know anything about machinery; that on these visits he kept away from the wheels when they were revolving because he was afraid he might get caught if he went too near; that he received no further instruction in the use of the filling-machines other than as above stated; that he knew if he got near revolving machinery he would get caught; that before the accident he had learned how to run the machines; that he knew there was a liability of being caught when he went in to stop or start a machine, and tried to guard against it; that he had to go there often, and was familiar with the place; and that he had to stoop down to stop or start the machines, and had in mind the danger of being caught in doing so.

There was evidence that the passageway between the machines was three feet and two inches wide; that the projections of the gearing and starting and stopping apparatus into this passageway were from eleven and one half to fourteen inches on the one side, and sixteen inches on the other; but whether these extreme projections came opposite to each other in the passageway was in dispute.

The defendants produced and had set up in the court-room a filling-machine, which was the machine on which this accident happened.

The plaintiff testified that it was in this gearing that his leg was caught. While testifying, he endeavored to operate, in the presence of the jury, the apparatus for starting and stopping the machine. As the machine stood in the court-room, this apparatus was on the further side of the machine, out of sight of the judge and the jury, and to inspect it the jury left their seats and passed to that side of the machine. The apparatus

consisted in part of a slide, which moved the belt from a loose pulley to a fast pulley to start the machine, and reversely to stop it. Before moving the slide it was necessary to draw out a pin which held it in place, and the plaintiff had not done this while showing the movement in the presence of the jury. The plaintiff's counsel in his argument contended that the manner in which the plaintiff operated the apparatus for starting and stopping the machine when the jury were viewing it tended to show that to move the belt from one pulley to the other was manifestly beyond the plaintiff's strength; and that he could not do it without stooping and straining, or without going between the projecting parts above mentioned. Imeson testified, for the defendants, that this movement could be made without difficulty, and that he could do it without going as far into the passageway as the projections; and by working on the machine he illustrated that the plaintiff had not first taken out the pin before attempting in the presence of the jury to move the slide.

What was done by the plaintiff and Imeson was without the sight or knowledge of the judge, and he first learned of the alleged difficulty which the plaintiff had in operating the machine by the comments of counsel in their arguments, and he ruled that it was not evidence in the case, and that his refusal so to consider it was not open to the plaintiff on exceptions.

On the above evidence the judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

_H. N. Sheldon,_ for the plaintiff.

_R. M. Morse, Jr., & E. Tappan,_ for the defendants.

FIELD, J. We think that it appears, from the testimony of the plaintiff himself, that the danger of getting caught in the gearing was obvious, and that he well understood what this danger was and how it was to be avoided, and that it was from his own want of care that he was injured. See _Sullivan_ v. _India Manuf. Co._ 113 Mass. 396; _Rock_ v. _Indian Orchard Mills,_ 142 Mass. 522; _Gilbert_ v. _Guild,_ 144 Mass. 601; _Ciriack_ v. _Merchants' Woolen Co._ 146 Mass. 182.

It is unnecessary to decide whether the presiding justice could or could not properly have permitted the plaintiff to work the machine in the presence of the jury for the purpose of showing that he had not sufficient strength to work it. It does not

appear that any request had been made that this might be done, or that the presiding justice or the defendants understood that the plaintiff was working the machine in the presence of the jury for any such purpose. Apparently the machine had been set up and was shown to the jury for the purpose of enabling them to understand better how the accident happened. If the exhibition had been intended to show anything else, a request should first have been made to the presiding justice, and the defendants should have had an opportunity to object to it, as well as an opportunity to test the evidence thus produced if the request had been granted, and the experiment should have been tried under the supervision of the presiding justice.

*Exceptions overruled.*