FREDERICK G. ROOD vs. LAWRENCE MANUFACTURING
COMPANY.

Middlesex.    January 14, 15, 1892. — February 25, 1892.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Negligence — Due Care — Elevator.*

A boy nineteen years old, of ordinary intelligence, employed in a mill, was set to
running a freight elevator. The sides of the elevator were formed of crossed
iron rods joining the platform with parallel crossbeams at the top; and it was
set in motion and stopped by means of a shipper rod, which was opposite one
side thereof but outside of the elevator well. He was told by another boy, who
was directed by his employer to teach him, to pull down or turn the shipper-
rod to stop the elevator in its descent, without further explanation. Subse-
quently, while descending from an upper floor and before passing it, he put his
hand out above the crossed rods and below the crossbeam, and grasped the
shipper rod so as to stop at the floor below. He kept hold of the shipper rod
until his hand was caught between the crossbeam and the edge of the opening in
the upper floor, and was injured. *Held*, that he could not maintain an action
against his employer for his injuries.

TORT, for personal injuries occasioned to the plaintiff while
in the defendant's employ and engaged in running a freight ele-
vator, which was alleged to be unsafe and dangerous, and upon
which the plaintiff was negligently set to work by the defend-
ant without instructions. Trial in the Superior Court, before
*Staples*, J., who allowed a bill of exceptions, which, so far as
material to the points decided, was as follows.

It appeared in evidence that the elevator in question ran from
the basement floor in a building of the defendant up through an
intervening floor to an upper floor; that the distance between
the middle and upper floor was about twelve feet; that this ele-
vator was wholly open at the ends for the loading of goods;
that the sides of the elevator were formed of iron rods or braces,
which were crossed, forming an open framework, and which
attached the platform of the elevator to horizontal crossbeams
parallel with the sides of the platform and a little over five
feet above it; that the distance between these crossbeams and
the edges of the opening in the upper floor, as the crossbeams
passed up or down, was but a quarter of an inch; that the
elevator was set in motion by means of a shipper rod, seven

eighths of an inch in diameter, which extended outside of the line of passage of the elevator from the basement through the middle and upper floors to the top of the apparatus; that this shipper rod at the upper floor was distant between four and five inches from the edge of the opening therein, and the same distance plus a quarter of an inch from the line of passage of the crossbeam on that side; that a person standing on the platform of the elevator, in order to grasp the shipper rod itself above the upper floor, would have to reach his hand through the framework at the side of the elevator and about five inches outside of the crossed braces; that fastened to the shipper rod, between the middle and upper floors, was a dog, and a person standing on the platform of the elevator as it descended from the upper floor could, by turning the shipper rod round, adjust this dog so as to meet another dog fastened to the upper part of the frame of the elevator; and that, when thus adjusted, the elevator would come to a standstill when the platform was level with the middle floor, but this adjustment could not be made until the dog on the shipper rod could be seen by the one running the elevator, and this was impossible until he had descended far enough to be below the upper floor.

The plaintiff testified that he was a little over nineteen years old at the time of the accident, which occurred on September 12, 1888; that he entered the defendant's employ on November 12, 1887, and from that time until August 18, 1888, he worked on an eyelet machine, which was about the size of an ordinary sewing machine, and was then discharged; that he was next employed by the overseer of the department where he got hurt, and went to work there on September 3, 1888; that the overseer told the plaintiff that one Lewis, a boy whom he pointed out to him, would teach him how to run the elevator, how to get warps and do other work, and what rooms the plaintiff was to work in; that the plaintiff went thereupon with Lewis, and during his first two days Lewis worked with him, showing him how to oil certain shafting upon the upper floor, and how to run the elevator; that part of his work was to go to the upper floor with a truck, there load warps on the truck, place the truck in the elevator, and descend with the warps to the middle floor, and there stop the elevator, remove the truck with the warps,

and deliver the warps on the middle floor. That as to said elevator, said Lewis instructed him how to start it, — by pulling down on the rod the elevator would go up, and by pulling up on the rod the elevator would go down, and in order to stop it at said middle floor, he could either pull on the rod the way that the elevator was going, or else he could turn the rod, either one; that it was not explained to the plaintiff by said Lewis, or by any one, how said elevator was stopped by turning the rod, nor were the two dogs pointed out to him, but said Lewis turned said rod several times in plaintiff's presence, but plaintiff did not understand what caused said elevator to stop when said rod was turned; that it was not pointed out or explained to plaintiff how near said crossbeam on said elevator passed to the edge of said upper floor in descending through it; that during the two days that he worked with said Lewis, they went up and down on said elevator about five times on each day, and thereafter the plaintiff used it alone about five times each day to go up and down, until said twelfth of September; that at about half-past eight o'clock in the morning of that day, the plaintiff put a load of warps on the elevator at the upper floor, got on the platform himself, and pulled up on the rod to start it down and the elevator started; that before the elevator had passed below the upper floor, the plaintiff put his hand through the side of the elevator, above where the rods or braces crossed and below the crossbeam, to take hold of the shipper rod, so as to turn it and stop the elevator at the middle floor; and that he took hold of the shipper rod, and while still turning it his hand was caught between the crossbeam on the elevator and the upper floor, and he was injured.

The plaintiff also testified, on cross-examination, that the elevator stopped itself at the upper floor, and that the only place where he had to do anything to stop it was at the middle floor; that the time of his getting hurt was the first time he had tried to stop the elevator at the middle floor by turning the rod; that up to that time, after Lewis had left him, he had always stopped it at the middle floor by pulling down on the rod; and that he knew that the shipper rod passed through the upper floor outside of the edge of the opening, and beyond the line of passage of the elevator.

There was evidence that the plaintiff was a boy fully as intelligent as the average.

The judge refused to rule, as requested by the defendant, that on the evidence the plaintiff could not recover, and submitted the case to the jury.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*L. S. Dabney,* for the defendant.

*P. J. Hoar,* for the plaintiff.

FIELD, C. J.   The plaintiff's counsel contends that the elevator and its appliances were defective and unsafe, and that the plaintiff was set to work the elevator without having been properly instructed.   The evidence does not show that the elevator was out of repair, or that there was any concealed danger in using it.   The danger that the plaintiff's hand might get caught in the manner it was caught, if he held it on the shipper rod until the crossbeam came down upon it, was obvious, and one that every person of full age and of ordinary intelligence must have understood.   *Moulton* v. *Gage,* 138 Mass. 390.   *Gilbert* v. *Guild,* 144 Mass. 601.   *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182, and 151 Mass. 152.   *Probert* v. *Phipps,* 149 Mass. 258. *Foley* v. *Pettee Machine Works,* 149 Mass. 294.   *Lothrop* v. *Fitchburg Railroad,* 150 Mass. 423.   *Murphy* v. *Webster,* 151 Mass. 121.   *Henry* v. *King Philip Mills, ante,* 361.

The plaintiff, as his testimony is recited in the exceptions, was a little over nineteen years old when he received the injury. He had worked for the defendant on an eyelet machine, about the size of an ordinary sewing machine, from November 12, 1887, to August 18, 1888, when he was discharged.   He was employed again on September 3, 1888, and the overseer told him that one Lewis, a boy, would teach him " how to run the elevator," etc., and Lewis, during the first two days, showed him how to run the elevator.   The exceptions state " that as to said elevator, said Lewis instructed him how to start it, — by pulling down on the rod the elevator would go up, and by pulling up on the rod the elevator would go down, and in order to stop it at said middle floor, he could either pull on the rod the way that the elevator was going, or else he could turn the rod, either one; that it was not explained to the plaintiff by said Lewis, or

by any one, how said elevator was stopped by turning the rod, nor were the two dogs pointed out to him, but said Lewis turned said rod several times in plaintiff's presence, but plaintiff did not understand what caused said elevator to stop when said rod was turned; that it was not pointed out or explained to plaintiff how near said crossbeam on said elevator passed to the edge of said upper floor in descending through it; that during the two days that he worked with said Lewis, they went up and down on said elevator about five times on each day, and thereafter the plaintiff used it alone about five times each day to go up and down, until said twelfth of September," when he received the injury complained of. He was injured about half-past eight o'clock in the morning. After the elevator had started to go down, and before the crossbeam had got below the top floor, he put out his hand through the open space above the intersection of the cross-rods, and below the crossbeam, and took hold of the shipper rod in order to turn it and so stop the elevator at the next floor below, and he kept hold of the rod until his hand was caught between the crossbeam of the descending elevator and the upper floor. There was no testimony that he was not of ordinary intelligence for a boy of his age. The only testimony on the subject was that he was a boy of very good intelligence. A boy nineteen years old, of ordinary intelligence, must, we think, understand the danger of keeping hold of a shipper rod, which is outside of the elevator well, until the crossbeam of the elevator on which he is standing catches his hand or arm between it and the edge of the floor through which the elevator is descending. This is a danger which we think he would understand and appreciate as thoroughly as an older person. We see no sufficient evidence of a want of due care on the part of the defendant, or of due care on the part of the plaintiff. The entry must be,

*Exceptions sustained.*