ANDREW KLEIBAZ vs. MIDDLETON PAPER COMPANY.

Essex.   November 7, 1901. — January 4, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & LORING, JJ.

*Negligence*, Contributory, Employer's liability.  *Evidence*, Circumstantial.

When a freight elevator has stopped without apparent cause three or four feet
below a floor of a building, it does not, as matter of law, show want of due care
on the part of the person operating it for him to remain on the elevator instead
of climbing out on the floor above to find out what is wrong.

It is evidence of negligence on the part of a mill owner maintaining a freight
elevator, in respect to an employee injured by its falling while he was engaged
in operating it, that the safety clutch on one side was wholly off and the one on
the other side out of order and disconnected with the spring by which it was in-
tended to be operated, that the spring and clutches were not in working order,
and that the workman whose duty it was to keep the elevator in repair testified
that if the clutches had worked the elevator would not have fallen.

If, in an action of tort for personal injuries alleged to have been caused by the
negligence of the defendant, the plaintiff introduces evidence from which the
jury properly may infer that the accident was caused by the defendant's negli-
gence, he need not point out the particular act or omission which caused the
accident.  Thus, in an action for injuries caused by the falling of a freight ele-
vator after it had stopped without apparent cause, evidence which tended to
show that the elevator worked loosely and had stopped before the accident
would justify a finding that the stopping of the elevator was due to the defend-
ant's negligence.

TORT, at common law, by an employee in the paper mill of
the defendant for injuries caused by the fall of a freight elevator
which the plaintiff was engaged in operating.  Writ dated No-
vember 23, 1899.

At the trial in the Superior Court, before *Maynard*, J., the
jury returned a verdict for the plaintiff in the sum of $20,000 ;
and the defendant alleged exceptions.

*H. P. Moulton*, (*G. C. Dickson* with him,) for the defendant.

*H. E. Bolles*, (*J. F. Quinn* with him,) was stopped by the
court.

LATHROP, J.   The only question which has been argued
before us is whether the judge who tried the case should have
ruled, as requested by the defendant, " That upon all the evi-
dence this action cannot be maintained."  This ruling was

requested at the close of the evidence for the defendant, so that if there is anything favorable to the plaintiff in the evidence for the defendant the plaintiff is entitled to the benefit of it.

The accident occurred on November 3, 1899. The plaintiff was a native of Austria and came to this country in 1894, and was over twenty-one years old at the time of the accident. He was hired in Boston to learn the business of the defendant. The day after his arrival at the mill the superintendent thereof took him to the elevator and told the elevator boy to instruct him what to do, and that he was to take his place. The elevator boy showed him which rope to pull to, go up and which to go down. For three days he and the elevator boy continued to go between the first and second floors by means of the elevator, taking up pails of color from the first floor to the printing machines on the second floor. After the elevator boy left, the plaintiff continued this work about ten days, until the accident, which happened in this way. The elevator was moving downward and came to a stop between two and four feet below the second floor. It was not stopped by any person, nor did the drum and elevator machinery stop, but the rope continued to unwind from the drum. Shortly after, the elevator fell with the plaintiff upon it, causing the injuries complained of.

The elevator consisted of a platform with upright posts midway on either side, which were connected at the top by a horizontal beam called the "draw-head." The elevator was open in front and boarded up on each side and the back to a height of three feet from the platform; but at the time of the accident some of the boards were missing from the back. The hoisting rope, which was attached to the centre of the draw-head of the elevator, extended upward over an iron pulley two feet in diameter at the top of the elevator well or space (a distance of ten feet above the second floor). It then extended nearly horizontally but slightly downward a distance of fourteen feet, over another pulley, thence directly downward to and around a drum to which it was attached and on which it was wound as the elevator was drawn up, and unwound as the elevator descended. The drum and the other elevator machinery were attached to the under side of the second floor in the building, being the ceiling of the first floor. About midway on the right hand side of

the elevator as one enters it, and close to but outside of the elevator car itself, was an endless rope extending up and down the elevator well connecting below with the elevator machinery and drum and at the top running over a loose pulley or wheel one foot in diameter. This endless rope is called the shipper rope and by it the elevator is started and stopped. Pulling down on the left hand line of the shipper rope, as one in the car faces them, would start the elevator down; pulling down on the right hand line of the shipper rope would start the elevator up. It operated to start, stop or reverse the elevator in the usual way, by shifting the power belt from fixed to loose pulleys in the elevator machinery below. The bottom of the elevator well was four feet below the first floor. At the centre on each side of the elevator well was a beam or guide extending from the bottom to the top, and on the face of each of these beams, next to the elevator car, was a wooden cleat or tongue about two inches square. The elevator car, by means of shoes or clamps attached to it, runs up and down guided by these tongues.

A safety clutch is a device attached to the draw-head of an elevator car to catch and stop it in case it starts to fall. The evidence was conflicting as to the condition of the safety clutches on this car at the time of and for some months prior to the accident. A clutch of the kind in question in working order is operated as follows: There are two shafts attached to the draw-head of the elevator, one on each side running parallel with it and both extending across the elevator car and out to the sides of the tongue on the guide post. At each end of these shafts is a fixed eccentric clutch or dog with teeth. Each shaft near the middle of the draw-head is connected by a collar and elbow-joint with an iron plate and spring attached under the centre of the draw-head in such a way that when the spring is drawn up or compressed the clutches are turned away from the wooden tongues; when the spring is released it turns the clutches against the wooden tongues, which they grip, and thus holds the elevator from moving downward. The hoisting rope is attached to a bolt which has play up and down and passes down through the draw-head and the spring and the iron plate under the spring in such a way that the weight of the elevator car hanging on the hoisting rope compresses the spring. If the hoisting rope breaks or

the strain on the rope is in any way removed, the spring is released and sets the clutches.

The defendant contends that the plaintiff was not in the exercise of due care. The only ground upon which this is urged is that ordinary care required him when the elevator stopped to step out and see what was wrong. But the elevator had then gone down three or four feet, according to the plaintiff's testimony. There was then no question of stepping out, but of climbing out or of remaining where he was. It cannot be said, as matter of law, that he was not in the exercise of due care. The cases of *Murphy* v. *Webster*, 151 Mass. 121, *Degnan* v. *Jordan*, 164 Mass. 84, *Rood* v. *Lawrence Manuf. Co.* 155 Mass. 590, and *Ramsdell* v. *Jordan*, 168 Mass. 505, cited by the defendant, have no application.

The defendant also contends that there was no evidence of the defendant's negligence. It is very plain from the plaintiff's evidence that the safety clutch on the rear side of the draw-head was wholly off at the time of the accident and had been so for some months ; that the shaft carrying the clutch on the front side was at one time broken down at one end, and turned outward ; and that subsequently, though a bolt was put in to hold up the end of the shaft, in place of a string, the shaft still remained turned outward, and disconnected from the spring by which it was intended to be operated. The spring and clutches were found to be rusty and not in working order. Bunker, who had charge of keeping the elevator in repair, and who was one of the defendant's witnesses, testified that if the clutches had worked, the elevator would not have fallen.

Finally, the defendant contends that the stopping of the elevator was the proximate cause of the injury, and that the plaintiff failed to show that this was due to the defendant's negligence. It seems to us, however, that while the plantiff was bound to introduce evidence from which the jury might properly infer that the accident was caused by the defendant's negligence, he was not required to point out the particular act or omission which caused the accident. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407. The evidence was conflicting on the question of the cause of the stopping. That for the plaintiff tended to show that the elevator worked loosely and had stopped before

the accident. If, therefore, the stopping of the elevator can be said to have been the proximate cause of the injury, rather than its falling, (which we do not concede, see *Blanchette* v. *Holyoke Street Railway*, 175 Mass. 51,) we are still of opinion that there was sufficient evidence to warrant the jury in finding that the defendant was negligent.

*Exceptions overruled.*