WILLIAM S. WEST *vs.* CHARLES LINEHAN.

Middlesex.    March 5, 1909. — March 29, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Of driver of and of postal clerk upon mail wagon.

At the trial of an action by a mail clerk against one, who was under contract with the United States to carry mail from the post office in Boston to a railroad station, for injuries alleged to have been received by the plaintiff while, in the performance of his duties, he was on the seat of a mail wagon, and to have been caused by the negligence of the driver of the wagon, an employee of the defendant, there was evidence tending to show that the mail was to be delivered at the railroad station under a shed with a roof supported by horizontal beams so low that one could not sit up straight on the wagon seat and pass under them, that the plaintiff was familiar with this state of affairs, that on former occasions the driver had stopped before entering the shed for the plaintiff to get down from the wagon and then had backed the wagon into the shed, but that on the occasion of the accident to the plaintiff he told the plaintiff to stoop down, which the plaintiff did, and then drove ahead under the beams without backing and stopped, that, after the wagon had stopped, the plaintiff raised his head to get down, when the team started forward and the plaintiff's head came in contact with a beam, causing the injuries complained of. *Held*, that there was evidence of due care on the part of the plaintiff and of negligence on the part of the driver.

TORT for personal injuries received by the plaintiff, a postal clerk in the employ of the United States, while in the course

of his duties he was on the seat of a mail wagon, and alleged to have been caused by the negligence of the driver of the wagon, who was employed by the defendant, who had contracted with the United States to carry mail from the post office in Boston to the North Station. Writ in the Superior Court for the county of Middlesex dated October 8, 1903.

The case was tried before *Aiken,* C. J. It appeared that the injury occurred at the North Station in Boston. The platform at the North Station upon which the mail was unloaded from the wagon was under a shed or roofed space, the roof resting on five beams set at their inside ends into the side of the main building and extending outwardly at right angles toward Nashua Street, where each was supported by an iron column set in the ground. It was against one of these beams that the plaintiff's head was struck, under the circumstances described in the opinion.

At the close of the evidence, the presiding judge directed a verdict for the defendant; and the plaintiff alleged an exception.

*F. H. Smith, Jr., (D. M. Hill* with him,) for the plaintiff.

*J. H. Ponce,* for the defendant.

SHELDON, J. It cannot be said as matter of law that the plaintiff was guilty of such negligence as to bar his recovery. He was acquainted with the construction of the platform to which he went with the defendant's driver, and seems to have been aware that there might be some danger of his head striking against the overhead beams if he went under them. But he was rightfully on the seat with the driver; and there was evidence that it had been the driver's practice to stop his wagon and let the plaintiff get off the seat before backing under the beams and up to the platform. On this occasion the driver did not follow that practice, but took the plaintiff directly under the beams. He warned the plaintiff to stoop down, and the plaintiff did so. But there was evidence that when the driver had reached the platform he stopped his horses; the plaintiff started to get off, raising his head as he did so; and just then the horses started again and apparently moved some distance, knocking the plaintiff's head against an overhead beam and injuring him. The jury might find that when the horses had stopped at the platform the plaintiff had a right to suppose that the final stop had been made and that the time had come

for him to straighten up and dismount from his seat, and that in acting accordingly he was doing what any reasonable man might have done under the same circumstances. And it might be found that he had a right to assume that the driver had his horses under control, and would neither start them nor allow them to start to his manifest danger. Accordingly, the question of his due care was for the jury.

So too the jury might find that the defendant's driver was guilty of negligence in driving up to the platform in an unusual manner, which exposed the plaintiff to a greater risk than had been incurred on former occasions, and in stopping his horses at such a point and in such a manner as might be found to have been an assurance to the plaintiff that the time had come for him to alight, and then starting his horses, or allowing them to start, under circumstances which plainly exposed the plaintiff to the risk of injury. The plaintiff was not bound to show the exact particulars of the driver's negligence. He was entitled to go to the jury if he proved facts from which an inference of negligence could properly be drawn. *Melvin* v. *Pennsylvania Steel Co.* 180 Mass. 196. *Kleibaz* v. *Middleton Paper Co.* 180 Mass. 363. *Erickson* v. *American Steel & Wire Co.* 193 Mass. 119. *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 191. The jury could find that the driver was negligent either because without warning the plaintiff he voluntarily started his horses when they were under his control, or because he failed to keep them sufficiently under control in view of the circumstances. There is nothing to indicate that the horses were at all restive, or that there was any difficulty in keeping them fully under control.

The case was doubtless a close one on both issues; but it should have been left to the jury.

*Exceptions sustained.*