PHILIP G. MARCHANT & another *vs.* CATHERINE M. CONNELLY.

Norfolk. December 5, 1956. — February 4, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Negligence*, Motor vehicle.

A finding of negligence on the part of one operating an automobile in the middle of a residential street twenty-two feet wide was warranted by evidence that after stopping to allow a small boy to cross from his home at the operator's left to the opposite side of the street, where he stood on the sidewalk, the operator started the automobile and had gone slowly about fifty feet when he heard something dragging under it, and upon stopping some twenty feet beyond found the boy, whom he had last seen standing on the sidewalk to his right, lying in the street under the automobile.

TORT. Writ in the Superior Court dated July 30, 1952.

The action was tried before *Donahue*, J.

*Rupert L. Mapplebeck*, for the defendant.

*Ely H. Chayet*, (*Malcolm H. Flash* with him,) for the plaintiffs.

COUNIHAN, J. This is an action of tort in which the plaintiff Philip G. Marchant seeks to recover damages for

personal injuries sustained on June 2, 1952, at about 12:15
P.M. when he was struck by an automobile operated by the
defendant on Sheldon Street, Quincy. In the same action
Philip's father seeks consequential damages. The jury
found for the plaintiffs and the case comes here upon the
exception of the defendant to the denial of her motion for
directed verdicts. There was no error.

The defendant lived at 85 Sheldon Street and Philip lived
with his parents next door. The age of Philip does not
appear in the record but he was attending nursery school.
As one looked at these houses there was a driveway approxi-
mately eight feet wide to the left of each house. The front-
age of each house lot was fifty-five feet.

Immediately before the accident the automobile had been
parked in the Connelly driveway with its front facing the
rear of the lot. At about 12:15 P.M. the defendant came out
of her house with her son to drive him to kindergarten.
Before she entered her automobile she looked to see if there
were any children behind it and she walked out to the side-
walk to see if there were any children around and she saw
none.

She entered the automobile with her son, started it and
backed out of the driveway. When the front end of the
automobile reached the sidewalk, she swung the front wheels
to the left and straightened them out on Sheldon Street.
When the automobile got straightened out she saw Philip
and his brother come out of the Marchant driveway and
stand on the sidewalk. Her vehicle was then moving slowly
and she brought it to a stop when she saw Philip step off the
sidewalk. Philip then crossed in front of her to the opposite
side of the street and stood on the sidewalk. His brother
remained where he was. She started up again and when she
reached a point just beyond the front door of the Marchant
house she heard something dragging under the front of the
automobile. It sounded like a cardboard box. She brought
the automobile to a stop just before she reached the drive-
way of the house of one Scavito which was next beyond
the Marchant house. She was moving four to five miles an

hour and the distance she travelled from the time she started up, after seeing Philip cross in front of her, to the point where she heard something under her automobile was approximately fifty feet. Thereafter before coming to a stop she travelled approximately twenty feet. When she got out of her automobile she looked under it and saw Philip lying on the street under the automobile with his feet sticking out behind the right front wheel. She pulled him out and took him to the hospital.

At all times she was driving in the center of the street and looking straight ahead. There was nothing to obstruct her view straight ahead or to her right or left. Sheldon Street was about twenty-two feet wide. The defendant did not see Philip before he came in contact with the automobile after she had last seen him standing on the opposite side of the street. She did not know how the accident happened.

The mother of Philip testified that she saw the automobile operated by the defendant as it passed her house and it was moving at a rate of ten to twelve miles an hour. She also testified that the defendant did not say when she talked to her after the accident that she had seen Philip cross in front of her. The defendant "just said he was standing on the sidewalk."

In these circumstances we are of opinion that there was sufficient evidence on the question of the negligence of the defendant, which is the only issue before us, to warrant the submission of the case to the jury. "The plaintiff was not bound to show the exact particulars of the driver's negligence. He was entitled to go to the jury if he proved facts from which an inference of negligence could properly be drawn." *West* v. *Linehan*, 201 Mass. 499, 501.

The jury could reasonably find that having seen Philip, a child of tender years, cross in front of the defendant's automobile to go to the opposite side of the street, she might well expect that he might recross the street to get back to the sidewalk in front of his house. She kept looking straight ahead and apparently gave no further thought to Philip. Sheldon Street was only twenty-two feet wide and she was

travelling in the center of it. We think the defendant should have realized that if Philip did attempt to recross the street he would have to move less than ten feet before he would come in contact with her automobile.

If, however, as it appears, she drove about fifty feet before the point of impact, it would seem reasonable to believe that she should have seen Philip when he left the right hand sidewalk in time to have avoided the accident. In any event, had she seen Philip before the impact she could have brought the automobile to a full stop at the rate of speed she says she was travelling in time to have avoided dragging him at least twenty feet, which undoubtedly aggravated the injuries he received.

We think the case at bar more nearly resembles *D'Ambrosia* v. *Brest,* 302 Mass. 316, *Birch* v. *Strout,* 303 Mass. 28, *DeLeo* v. *Jefferson,* 331 Mass. 317, *Mason* v. *Steinmetz,* 332 Mass. 575, and *Ruggiero* v. *Mello,* 333 Mass. 295, than it does *O'Reilly* v. *Sherman,* 298 Mass. 571, *Burke* v. *Durland,* 312 Mass. 291, *Cioffi* v. *Lowell,* 316 Mass. 256, and *Walker* v. *Bullard,* 317 Mass. 288, upon which the defendant relies.

*Exceptions overruled.*