GERTRUDE L. PARSONS & another *vs.* JAMES RYAN
(and a companion case[1]).

Essex.   December 9, 1959. — January 7, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Negligence*, Motor vehicle.   *Evidence*, Of consciousness of liability, Matter
of conjecture.

At the trial of an action for injuries sustained by the plaintiff when
struck by an automobile alleged to have been operated by the de-
fendant, evidence of evasive conduct and false statements on the part
of the defendant after the striking of the plaintiff was relevant on the
issue of liability.   [248]

Evidence in an action of the circumstances in which the plaintiff was
found lying injured one afternoon in a main highway opposite the head
of an intersecting street at about the time when the defendant had
driven down the highway, turned the corner into the intersecting
street, gone down it a short distance, backed out into the highway
and started down it, and, after hearing a call that he had just hit the
plaintiff, had looked back, stopped or nearly stopped, and then had
driven off without answering, even if it warranted a finding that the
defendant's automobile hit the plaintiff, left what happened immedi-
ately preceding the hitting of the plaintiff a matter of conjecture and
did not warrant a finding of negligence on the part of the defendant.
[248–249]

TWO ACTIONS OF TORT.   Writs in the District Court of
Eastern Essex dated January 31, 1957.

Upon removal to the Superior Court, the actions were
tried before *Thompson*, J., who ordered verdicts for the de-
fendants.

*Joseph L. Tauro*, for the plaintiffs.

*Andrew R. Linscott*, for the defendants.

WHITTEMORE, J.   On August 6, 1956, at about 1 : 15 P.M.,
the minor plaintiff, age three (hereinafter the plaintiff), was

---

[1] The companion case is by the same plaintiffs against Gloucester Seafoods
Corporation.

observed by two neighbors lying injured on the paved way of Eastern Avenue, Gloucester, opposite the head of Cross Street, which joins Eastern Avenue, an east-west "main highway," on its southerly side, and is about 100 or 120 yards in length. Mrs. Mary Martin, when at the front window of her house at 9 Eastern Avenue, the second house from the southwest corner of Cross Street, between 1 and 1:30 P.M., heard a little cry and "so she looked out." She saw the plaintiff in the street and saw Mrs. Lucretia R. Damon going toward her. She also then saw an automobile, a vehicle later established to be owned by the corporate defendant and driven by the defendant Ryan, stopped at the head of Cross Street; "two thirds of the car was into Cross Street"; she saw the automobile back up and start down Eastern Avenue. Mrs. Damon, then living at 2 Cross Street on the corner, between 1:15 and 1:30 P.M., on August 6, went out on her porch, which faced Eastern Avenue, and saw the plaintiff lying in the street. She "went across the street to the child," saw that she was badly hurt, looked in the direction of Mrs. Martin's house and saw an automobile, the corporate defendant's automobile, moving slowly down Eastern Avenue, and shouted "Did you hit this child," or, as Mrs. Martin recalled, "Come back here, you just hit this child." The automobile was then in front of Mrs. Martin's window, ten to twelve feet from the curb on her side, on the "left hand" (southerly) side of the road. Ryan heard the call, looked back, stopped, or nearly stopped, and then drove off, and did not answer. Mrs. Martin saw no automobiles parked near by on either side of Eastern Avenue, and "when she first saw the little girl she saw no cars moving in the vicinity"; Mrs. Damon did not see any other automobiles near by. None was parked in the area, and "there was no other traffic on Eastern Avenue while she was there with the child." This much of what happened can be taken as established, viewing the evidence favorably for the plaintiff as we do in judging the rightness of the judge's action in directing verdicts for the defendants. But there is no direct evidence of causation or negligence.

The movements of the automobile on Eastern Avenue and Cross Street, prior to the moment when it was observed about to back into Eastern Avenue from Cross Street, are described in the bill of exceptions only in Ryan's testimony, in the auditor's report, and in consistent testimony of a police officer of what Ryan told him. According to this evidence Ryan had come down Eastern Avenue at a speed of from twenty to twenty-five miles per hour and had made a left hand turn into Cross Street, to go through it. Ryan testified that "to make the corner" he slowed to ten or fifteen miles per hour. "After he had gone 100 or 200 feet into Cross Street," as the auditor found, Ryan saw a truck which blocked the narrow street. Ryan then backed the automobile to the point at which it was observed by Mrs. Martin. He testified, and the auditor found, that he stopped to allow traffic to go by.

Ryan testified that when stopped at the head of Cross Street he looked out the rear window and saw a child in the street and a woman running across to pick it up. The auditor found that Ryan had seen no child in or near the street as he approached Cross Street, and the police officer testified that Ryan had said in his employer's office, when cautioned to tell the truth, and after prior evasive and false statements, that he did not know he was in an accident, and when asked if it was possible that he could have hit the child without knowing it he said "It is possible, but I don't think I did," and when asked if he had seen the child in the street had answered "that he did see the child in the street after he went by but he didn't see the child in front of him," "that as he was driving along Eastern Avenue, he saw no child in the street, but that he saw a child in the street later"; that it was "none of his business"; and that he saw the child from the rear of his automobile. The officer could not say whether Ryan told him that this was when "he was on Cross Street or Eastern Avenue."

Ryan was overtaken by the police about 1:30 or 1:40 P.M. There were no brush marks on the dust on the automobile or other marks when it was then examined.

The testimony permitted the conclusion that the plaintiff had been hit by an automobile.

The officers, in plain clothes and in a vehicle without police insignia, stopped the automobile with Ryan in it on East Main Street near the foot of Cross Street and walked around the automobile. Ryan asked why the automobile had been stopped ("What's the story Chief?") and was told that the automobile had been reported in an accident. Ryan said "You've got the wrong car, Chief," "the wrong number," and answered negatively when asked if he had struck a child up on Eastern Avenue, which was in sight and in which direction the officer pointed. When asked to account after being told that the officers had the number and description of his automobile, he described his movements after eating lunch and the officer knew that the course described would have put Ryan on Eastern Avenue in the area of the accident. Ryan lived in Hingham and testified that at the time of the accident he was "just familiar with the names of the main street and the street on the fish pier." Ryan went with the officer to the accident scene and denied he had heard Mrs. Damon shout, but when Mrs. Damon said "[you] heard . . . all right because you started to stop," he said he had heard her and had observed the child in the street, but "he didn't strike it and it was none of his business so he wasn't going to get involved."

There can be no doubt of the relevance of the evidence of Ryan's evasive conduct and false statements to the issue of liability. *Hall* v. *Shain*, 291 Mass. 506, 512–513. *Rich* v. *Finley*, 325 Mass. 99, 105.

The question remains, however, can it be concluded from all the evidence including the implied admissions that there was a greater probability than not that Ryan's automobile hit the plaintiff and that it was being operated negligently? *Atlas* v. *Silsbury-Gamble Motors Co.* 278 Mass. 279, 282–283. We assume, without decision, an affirmative answer to the first question. We think that negligent operation could not be found. Disregarding the evidence favorable to Ryan which excludes his negligence, we can only speculate on what

did happen. "The mere happening of an accident . . . where the circumstances immediately preceding it are left to conjecture, is not sufficient to prove negligence on the part of the operator of the vehicle." *Callahan* v. *Lach,* 338 Mass. 233, 235. There is no basis for concluding that the vehicle was turning the corner into Cross Street ". . . at a rate of speed exceeding fifteen miles per hour" (G. L. c. 90, § 17); that the plaintiff, if hit by Ryan, was hit elsewhere than about opposite the corner where found; or that the speed of the automobile was related to the accident. *Ellis* v. *Ellison,* 275 Mass. 272, 274–275. The implied admissions in Ryan's conduct and talk do not sustain the plaintiff's burden on the issue of negligence. Their probative force was weak on that issue. Censurable yielding to the impulse to avoid both the inevitable inconvenience of proved involvement and the risk of liability could be taken fully to account for what Ryan did and said. As to the caution required to avoid erroneous inferences from conduct, see Wigmore, Evidence (3d ed.) § 273, and his comment in note 2 on *Hall* v. *Shain, supra.* In *Credit Serv. Corp.* v. *Barker,* 308 Mass. 476, 481, the defendant's consciousness of liability was evidenced by a conveyance without consideration and an incorporation a few days before action was begun. This court said (p. 481), "An implied admission of this sort may turn the scale where the evidence is conflicting. But it forms an insufficient foundation for the erection of an entire case by mere inference without other evidence." The issue of Ryan's negligence is the decisive issue, if not the "entire case," and we think the principle is applicable. In the circumstances there is insufficient evidence to make reasonable the conclusion that negligence of Ryan caused the accident. See cases cited *ibid.,* p. 481. Compare, for express admission of omission to act, *Machado* v. *Kaplan,* 326 Mass. 615, 617. In *Hall* v. *Shain, supra,* 291 Mass. 506, 508–511, the issue concerned only the admissibility of the evidence of the defendant's appearance after the accident. The defendant had admitted that he hit the deceased and the evidence apart from the implied admissions was sufficient to show negli-

gence.  In *D'Arcangelo* v. *Tartar*, 265 Mass. 350, the issue was identity of the automobile and driver.  The direct evidence supported a finding of negligence of the driver of whatever automobile hit the plaintiff, and there was some other evidence of identity in addition to the evidence tending to show consciousness of liability.

*Exceptions overruled.*