HELEN SPANO, administratrix, *vs.*
WILSON TISDALE COMPANY.

Suffolk. December 8, 1971. — February 22, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Negligence,* Motor vehicle.

A finding of negligence on the part of the operator of a motor vehicle which came in contact with a five year old pedestrian on a street was not warranted where the evidence left the circumstances leading up to the accident a matter of conjecture. [212–214]

TORT. Writ in the Superior Court dated October 23, 1959.
The action was tried before *Fairhurst,* J.
*Vincent J. Celeste* for the plaintiff.
*William H. Shaughnessy* for the defendant.

HENNESSEY, J. This is an action of tort in which the plaintiff administratrix seeks to recover for the conscious suffering and death of the plaintiff's intestate as a result of injuries received when he was struck by a newspaper delivery truck owned by the defendant and operated by its employee, one Karlin, while in the scope of his employ-

ment.   The jury returned verdicts in favor of the plaintiff for both conscious suffering and wrongful death.   The judge later ordered the entry of verdicts for the defendant under leave previously reserved by him.   The case is before us on the plaintiff's exceptions to the entry of the verdicts for the defendant.   In addition to the bill of exceptions, we have before us a number of photographs of both the area where the accident occurred and the truck involved in this accident.

The evidence most favorable to the plaintiff was as follows: The intestate was a boy five years of age.   The accident occurred on Gove Street in East Boston about 2:40 in the afternoon of May 18, 1959.   It was a clear, dry day.   Gove Street is a public way which runs east and west, and measures thirty-five feet from curb to curb.   It is a deadend street which ends about ninety feet from the last house, described as 176 Gove Street, which house is on the northerly side of the street.   On the southerly side of Gove Street there was a sidewalk about four feet in width.   Immediately adjacent and parallel to this sidewalk was a solid wooden fence six feet high which began at Geneva Street, a street which intersected Gove Street at its westerly end.   The fence extended sixty-eight to seventy feet along the southerly sidewalk line of Gove Street, and then turned southerly at a right angle to the Gove Street sidewalk.

The land abutting Gove Street on the northerly side beyond 176 Gove Street, and the land beyond the wooden fence which abuts Gove Street, was vacant and unseparated land.   This area was used as a play area and was known as Amerina Park.   The driver Karlin knew that the area was densely populated.   He knew that Amerina Park had been a play area years before.   He had seen some people playing in that area in all the years he had traveled there, but he testified that the area was not used as a play area at the time of the accident.   Gove Street is used very little by vehicular traffic.

Karlin was operating a "[w]alk-in" truck with two large sliding doors to the left and right of the driver.   It

had very large front windows and low front fenders. The eye level of the operator is five feet from the ground, and the front fenders are three to three and one-half feet high. The door on the right side was closed, and the door on the left was open, at the time of the accident.

Karlin drove the truck onto Gove Street in an easterly direction toward the dead end. He was driving parallel to the wooden fence on his right side. He intended to deliver newspapers to a newsboy who lived at 176 Gove Street. That house was on his left side as he drove. He intended to make a U-turn on Gove Street. The U-turn would require about three motions of the truck because the street was narrow.

He was driving a little to the right of the center of the road. About half way or one quarter of the way along the wooden fence, he veered the truck to the right in preparation for the U-turn to the left. He started to make the left U-turn just before reaching the end of the fence. He had been driving at a maximum of ten miles an hour. As he approached the end of the fence, however, he was moving about three to five miles an hour.

Before the accident Karlin saw no children or other persons ahead of him, or to his right or left, on Gove Street. He did observe a man down at the dead end of the street. He operated the truck about three feet from the curb to his right for most of the length of the fence, and started to make his left turn just before reaching the end of the fence. At that time there was no nearby obstruction to his view except the fence. As he was about to make his left turn, he looked to his right and then, as he started to turn the vehicle, he was looking in the direction in which the vehicle was moving.

Karlin felt a thump at the right front wheel of the truck, and stopped the truck immediately. The truck was stopped at an angle to the curb with the front of the truck pointed in a northeasterly direction and almost touching the northerly curb, and with the rear of the truck pointed in a southwesterly direction. The boy was "lying about halfway between the front and the end of the truck, with

his head facing" the southerly curb. This was the first time that Karlin had seen the boy.

From blood spots on the road and other evidence it could be found that the contact between the boy and the truck occurred on the road at a point which was approximately ten feet from the nearest part of the fence, and nineteen feet from the easterly end of the fence.

There was evidence from which conscious suffering of the boy could properly be inferred, and from which it would be found that contact with the truck caused the injuries and death of the boy. The defendant correctly concedes that the issue whether the boy was contributorily negligent was for the jury to decide. G. L. c. 231, § 85. *Pond* v. *Somes*, 302 Mass. 587. The only issue before us is whether there was sufficient evidence to warrant an inference that negligence of Karlin was a contributing cause of the accident.

1. We conclude that the judge was correct in entering verdicts for the defendant. The mere happening of an accident between a motor vehicle and a pedestrian, where the circumstances immediately preceding it are left to conjecture, is not sufficient to prove negligence on the part of the operator of the vehicle. *Callahan* v. *Lach*, 338 Mass. 233, 235, and cases cited. The evidence was not sufficient to warrant a conclusion that any negligence of Karlin was a contributing cause of the accident. There was no evidence which permitted an inference of excessive speed, or unlawful conduct, in Karlin's operation of the truck. The evidence concerning the use of the area beyond the fence as a play area was not so compelling as to be controlling in the light of the total circumstances, and in the light of Karlin's limited knowledge of the area as a play area. *Birch* v. *Strout*, 303 Mass. 28, 30. *Falvey* v. *Hamelburg*, 347 Mass. 430, 431–434. The evidence would not support a finding by inference or otherwise that Karlin had seen or in the exercise of reasonable care should have seen the boy in time to avoid the accident. *Luvera* v. *DeCaro*, 317 Mass. 222, 224. *McCann* v. *M & M Transp. Co.* 351 Mass. 711.

There was no evidence that the boy was ever in front
of the truck before the accident.   It is a matter of con-
jecture as to where the boy came from just before the
accident.   In these circumstances, it is just as likely as
not that he came from a place of concealment behind the
end of the fence nineteen feet from the point of the acci-
dent.   Considering the design of the truck, the direction
in which it was moving, and the probable height of the
boy, the evidence does not warrant an inference that
Karlin could have seen the boy at any time before the
accident, even if Karlin had looked in precisely the appro-
priate direction at precisely the right time.   We also
take cognizance of the rapidity with which a child of this
age can move, and the manner in which Karlin operated
the vehicle prior to the accident.   In consideration of all
the material evidence, we conclude that an inference is
not warranted that Karlin was negligent by failure to
see the boy before the accident and in time to avoid the
accident.

The plaintiff relies on certain cases involving injuries
to pedestrians wherein this court decided that the issue
as to the negligence of the defendant motor vehicle opera-
tor was for the jury to decide. *Pawloski* v. *Hess,* 253 Mass.
478. *Ponticelli* v. *Cataldo,* 255 Mass. 473. *Linnane* v. *Mill-
man,* 261 Mass. 491. *Stacy* v. *Dorchester Awning Co.
Inc.* 290 Mass. 356. *Perricotti* v. *Andelman,* 298 Mass.
461. *D'Ambrosia* v. *Brest,* 302 Mass. 316. *Birch* v.
*Strout,* 303 Mass. 28. *Mroczek* v. *Craig,* 312 Mass. 236.
*McGovern* v. *Thomas,* 317 Mass. 740. *Preston* v. *Cianci,*
321 Mass. 297. *Bartley* v. *Almeida,* 322 Mass. 104.
*Bouley* v. *Miller,* 322 Mass. 369. *DeLeo* v. *Jefferson,* 331
Mass. 317. *Mason* v. *Steinmetz,* 332 Mass. 575. *Marchant*
v. *Connelly,* 335 Mass. 397. *Perry* v. *LaPlante,* 343
Mass. 570.   We conclude that the case before us more
nearly resembles a line of decisions involving pedestrians,
wherein we ruled that a directed verdict for the defen-
dant motor vehicle operator was required because no
inference of the defendant's negligence was permissible.
*Lynch* v. *Krancer,* 302 Mass. 593. *Luvera* v. *DeCaro,* 317

Mass. 222. *Rose* v. *Silveira,* 318 Mass. 709. *Tamagno* v. *Conley,* 322 Mass. 218. *Woods* v. *DeMont,* 322 Mass. 233. *Cleary* v. *St. George,* 335 Mass. 245. *Helie* v. *Goldstein,* 338 Mass. 22. *Callahan* v. *Lach,* 338 Mass. 233. *Parsons* v. *Ryan,* 340 Mass. 245. *Falvey* v. *Hamelburg,* 347 Mass. 430.

*Exceptions overruled.*